The **PROCTER & GAMBLE COMPANY, Plaintiff,**

v.

**NABISCO BRANDS, INC., Keebler Company and Frito–Lay, Inc., Defendants.**

**Civ. A. No. 84–333 LON.**

United States District Court, D. Delaware.

April 2, 1987.

See also, D.C., 711 F.Supp. 759.

Robert H. Richards, III, E. Norman Veasey, and Robert W. Whetzel of Richards, Layton & Finger, Wilmington, Del., (Jerome G. Lee, (argued), Harry C. Marcus, John F. Sweeney, of counsel), and Christopher A. Hughes of Morgan, Finnegan, Pine, Foley & Lee, New York City, Julius P. Filcik, Rose Ann Dabek, and Richard C. Witte of Procter & Gamble, Cincinnati, Ohio, for plaintiff Procter & Gamble Co.

Mary B. Graham of Morris, Nichols, Arsht & Tunnell, Wilmington, Del. (Paul Heller, (argued), Edward W. Greason, of counsel), and Walter Scott of Kenyon & Kenyon, New York City, for defendant Nabisco Brands, Inc.

Howard M. Handelman of Bayard, Handelman & Murdoch, Wilmington, Del. (Daniel M. Riess, (argued) of Lockwood, Alex, Fitzgibbon & Cummings, Chicago, Ill., of counsel), William Glendon, Louise Sommer, and David A. Schulz of Roger & Wells, New York City, Craig S. Stevens of Kee-

bler Co., Elmhurst, Ill., for defendant Keebler Co.

Donald J. Wolfe, Jr. of Potter, Anderson & Corroon, Wilmington, Del., (Wayne Harding (argued), of counsel), and Paul M. Janicke, of Arnold, White & Durkee, Houston Tex., Terrence D. Dreyer of Frito–Lay, Inc., Dallas, Tex., for defendant Frito–Lay, Inc.

## OPINION

LONGOBARDI, District Judge.

On June 19, 1984, Plaintiff The Procter & Gamble Company ("P & G") brought these actions alleging patent infringement, inducement of patent infringement and unfair competition.[1] United States Letters Patent No. 4,455,333 ("the '333 patent") was issued to P & G on the same date and covers the invention styled "Doughs and Cookies Providing Storage–Stable Texture Variability." The patent describes a method of manufacturing ready-to-serve cookies which remain crispy on the outside and chewy on the inside during an extended shelf-life. P & G markets its product under the Duncan Hines label.

P & G brought separate actions against each of the three Defendants. Nabisco Brands, Inc. ("Nabisco"), the Defendant in Civil Action No. 84–333 LON, markets its own line of dualtextured cookies under both the "Almost Home" and "Chewy Chips Ahoy" labels. Civil Action No. 84–334 LON was brought against Defendant

Keebler Company ("Keebler") which markets "Soft Batch" cookies; and Civil Action No. 84–335 LON was initiated against Defendant Frito–Lay, Inc. ("Frito–Lay") which markets "Grandma's Rich 'n Chewy" cookies. Each of the Defendants has challenged the validity of the '333 patent, denied infringement by their products, and each has counterclaimed alleging acts of unfair competition by P & G and inequitable conduct before the United States Patent and Trademark Office ("the PTO"). More importantly, for the purposes of the instant dispute, each of the Defendants has also vigorously denied P & G's allegations of unfair competition.[2]

The original complaints filed by P & G allege various acts of unfair competition committed by each Defendant. The acts described on the face of the complaint are limited to what might broadly be termed "industrial espionage."[3] On several occasions, including a pretrial conference, P & G has affirmatively represented that the case is "basically a patent infringement case."[4] The Court itself noted that the unfair competition allegations apparently involved simple acts of industrial espionage allegedly committed by Defendants' employees.[5]

In June, 1986, P & G filed the present motions seeking to amend Count IV in each of the original complaints in order to allege other acts of unfair competition, comprised mainly of alleged fraudulent conduct before the PTO.[6] As to Frito–Lay, P & G

1. P & G's original complaint also contained a count alleging "threatened patent infringement." This count was later dropped by stipulation of the parties. C.A. No. 84–333 LON, Docket Item ("D.I.") 19.

2. Due to the proprietary information involved and the sensitive nature of the issues involved, the parties have agreed to proceed under a protective order. To this end, specific examples are omitted in favor of general examples in this Memorandum Opinion.

3. See, e.g., C.A. No. 84–333 LON, D.I. 1, ¶ 21; C.A. No. 84–334 LON, D.I. 1, ¶ 21; C.A. No. 84–335 LON, D.I. 1, ¶ 21.

4. In September, 1984, counsel for P & G briefly explained the unfair competition count as industrial espionage and continued, "[b]ut the case is basically a patent case, and what we are

concerned with here is the fact that we were delayed in getting this patent.... And for that reason, we're very anxious to go ahead with this case and not have any more delays." D.I. 38 at 9–10; see also D.I. 4 at 12 (Plaintiff's Opening Brief in Support of Coordinated Discovery Plan, June 6, 1984).

5. Procter & Gamble Co. v. Nabisco Brands, Inc., 604 F.Supp. 1485, 1492 (D.Del.1985).

6. For example, over a year prior to the issuance of the '333 patent, the PTO printed for issuance patent document number 4,374,862 ("the '862 patent") which covered essentially the same claims as the '333 patent. Prior to the scheduled February 22, 1983 issuance date, the PTO withdrew the '862 patent from issuance. It appears that the never-issued patent was inadvertently mailed by the PTO to the members of at

also seeks specifically to allege participation in a conspiracy with the other Defendants to prevent or delay the issuance of the '333 patent. P & G also seeks to add to or further define the original claims of industrial espionage. Defendants do not oppose the amendments insofar as they relate to industrial espionage.[7] As to the remaining allegations of unfair competition based on either alleged fraudulent actions before the PTO or conspiracy in furtherance thereof, Defendants vigorously oppose P & G's motions on several grounds.

## I. LEGAL STANDARDS

Rule 15(a) of the Federal Rules of Civil Procedure provides the standard by which the Court must judge motions to amend. In relevant part, the Rule provides that "a party may amend his pleading only by leave of the court or by written consent of the adverse party; and *leave shall be freely given when justice so requires.*" Fed. R.Civ.P. 15(a) (emphasis added).

The policies informing Rule 15 are well-established and require little elaboration here. In general, the Rule reflects the policy of ensuring that claims are decided on the merits rather than on the procedural technicalities of pleading and the related policy which dictates that pleadings play the relatively limited role of providing notice of claims and defenses. *See* 6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1471 (1971). In modern practice, pleadings do not serve the purposes of fact revelation and issue formulation. Those steps are adequately discharged by discovery. *See id.*

In setting forth guidelines for the exercise of the wide discretion given the District Courts under Rule 15, the Supreme Court expressly noted the policy of facilitating decisions on the merits rather than on technicalities. *See Foman v. Davis,* 371 U.S. 178, 181–82, 83 S.Ct. 227, 229–30, 9 L.Ed.2d 222 (1962) (quoting *Conley v. Gib-*

son, 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957)). More specifically, the Court stated

Rule 15(a) declares that leave to amend "shall be freely given when justice so requires"; this mandate is to be heeded. See generally, 3 Moore, *Federal Practice* (2d ed. 1948), ¶¶ 15.08, 15.10. If the underlying facts or circumstances relied upon by plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. —the leave sought should, as the rules require, be "freely given." Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

371 U.S. at 182, 83 S.Ct. at 230, *quoted in Thermal American Fused Quartz Company v. John L. Briggs & Company,* C.A. No. 84–46 LON, slip op. at 2–3 (D.Del. Sept. 15, 1986). As such, courts consider undue delay, bad faith or dilatory motive, undue prejudice and failure to state a cause of action in deciding whether leave to amend should be granted. *See Adams v. Gould, Inc.,* 739 F.2d 858, 864 (3d Cir.1984), *cert. denied,* 469 U.S. 1122, 105 S.Ct. 806, 83 L.Ed.2d 799 (1985).

 Well-established precedent in the Third Circuit[8] dictates that delay, in and of itself, is an insufficient basis for denial of a motion to amend. *Thermal American,* C.A. No. 84–46 LON, slip op. at 4 (noting

---

7. Frito–Lay's consent is conditioned on the filing of the amendments under seal.

8. In resolving disputes under Rule 15 in cases where the Federal Circuit has jurisdiction over appellate proceedings, this Court nevertheless applies the law of the Third Circuit. *See Cornwall v. U.S. Const. Mfg. Inc.,* 800 F.2d 250, 252–

least one subclass of food-related patent subscribers. There is a dispute about how the Defendants received copies of the '862 patent which was never officially issued by the PTO. P & G ultimately filed a Freedom of Information Act request with the PTO in order to determine how the '862 patent was released.

*Butcher & Singer, Inc. v. Kellam*, 105 F.R.D. 450, 452 (D.Del.1984)); *see Heyl & Patterson Intern., Inc. v. F.D. Rich Housing*, 663 F.2d 419, 425–26 (3d Cir.1981), *cert. denied*, 455 U.S. 1018, 102 S.Ct. 1714, 72 L.Ed.2d 136 (1982). Hence, a showing of undue prejudice or unfair disadvantage to the nonmovant is required before delay provides an adequate basis for denial. *Butcher & Singer*, 105 F.R.D. at 452; *see Howze v. Jones & Laughlin Steel Corp.*, 750 F.2d 1208, 1212 (3d Cir.1984); *Cornell & Co., Inc. v. Occup. S. & H. Review Com'n*, 573 F.2d 820, 823 (3d Cir.1978). "[T]he proper standard is one that balances the length of the delay against the resulting prejudice. In other words, the longer the period of unexplained delay, the less will be required of the nonmoving party in terms of showing prejudice." *Advocat v. Nexus Industries, Inc.*, 497 F.Supp. 328, 331 (D.Del.1980), *quoted in Thermal American*, C.A. No. 84–46 LON, slip op. at 4. Further, in determining the propriety of granting leave to amend, the Court must balance its interest in achieving a decision on the merits against any resulting prejudice or unfair disadvantage to the nonmovant. *See Butcher & Singer*, 105 F.R.D. at 452 (noting *Foman*, 371 U.S. 178, 83 S.Ct. 227).

## II. P & G'S PROPOSED AMENDMENTS

A. *Misappropriation of Confidential Patent Office Information by All Defendants*

■ In the main, P & G seeks to add allegations of misappropriation of confidential PTO data as against each Defendant.[9] Defendants have raised arguments under each of the standards set forth in *Foman*, discussed *supra*. Thus, the Court turns to a consideration, *seriatim*, of each of the four factors.

### 1. *Undue Prejudice*

Prejudice to the nonmovant is the "touchstone" for denial of leave to amend. *Howze*, 750 F.2d at 1212; *Heyl & Patterson*, 663 F.2d at 425; *Cornell & Company*, 573 F.2d at 823. Logic dictates that if leave is to be freely given, unless there is some indication of prejudice to the nonmovant, the amendment should be allowed. Indeed, in considering "undue delay" courts in effect look to the prejudice caused by that delay. Hence, "undue delay" is in reality delay that results in undue prejudice or unfair disadvantage to the nonmovant.

Defendants argue that they would be substantially prejudiced if the proposed amendments are allowed. The result, they assert, would be enormous additional time and expense for discovery as well as a lengthier and more complicated trial.[10] Defendants further contend that the proposed amendments raise vexing issues of public policy concerning the role of the PTO, the extent of the right to petition the PTO in order to block the issuance of a pending patent and the role of Patent Examiners in the patenting process.[11] Similarly, they contend that additional discovery would have to be taken of PTO personnel, patent counsel for the Companies and former employees of all parties.

53 (Fed.Cir.1986). This results from the need to "maintain a uniformity of guidance available to individual district courts in . . . purely procedural matters. . . ." *In re Intern. Medical Prosthetics Research Assoc.*, 739 F.2d 618, 620 (Fed.Cir. 1984); *see Atari, Inc. v. JS & A Group, Inc.*, 747 F.2d 1422, 1438–40 (Fed.Cir.1984). Regardless, the Court is confident that the standards for deciding Rule 15 motions are well-established and vary little from circuit to circuit. Indeed, the Federal Circuit has considered long delay and the resultant lowering of the need to show prejudice in the balance. *Tenneco Resins, Inc. v. Reeves Bros., Inc.*, 752 F.2d 630, 634–35 (Fed. Cir.1985).

9. As to Nabisco, C.A. No. 84–333 LON, seven subparagraphs are at issue. D.I. 270, ¶¶ 21(d)–

(j); as to Keebler, C.A. No. 84–334 LON, five subparagraphs are at issue. D.I. 301, ¶¶ 21(h)–(1); and as to Frito–Lay, C.A. No. 84–335 LON, two subparagraphs are at issue. D.I. 304, ¶¶ 21(h) and (i).

10. For example, Nabisco asserts that it is now "two years behind" P & G in discovery on these issues. D.I. 591 at 53.

11. The Court questions the relevance of these issues except to the extent that they inject complex issues which would lengthen or greatly complicate the trial. Mere assertions that the issues are complex provide insufficient grounds to deny leave to amend.

In arguing that they will be unfairly disadvantaged, Defendants rely in the main on the additional discovery which will allegedly be required. They assert that they will not be able to meet the present cut-off of April 4, 1987 and that inclusion of the new allegations would make discovery and trial preparation unmanageable. Further, overlapping with their bad faith and undue delay arguments, discussed *infra*, Defendants argue that P & G has known of the bases for these claims for several years and has taken substantial discovery on the issues. As such, any discovery taken by the Defendants will be directed at "catching-up." The gist of the argument is that while Defendants are bogged down in the tedium of depositions and document discovery, P & G will be preparing its case, to Defendants' disadvantage. In point of fact, counsel for P & G stated affirmatively on the record at the hearing that P & G does not require further discovery on these matters and that P & G will make the April 4 deadline.[12]

Given the magnitude of the present case and that discovery has already proceeded in volume, the Court has difficulty in determining what undue prejudice could result to the Defendants. Discovery cut-offs have been made and extended several times previously. No trial date has been fixed and, in reality, the likelihood of trial prior to mid–1988 is remote at best. Because P & G has affirmatively represented that it requires no extension of discovery past April 4, presumably the Defendants' discovery can be accelerated by cooperation among all parties for the depositions of both party and non-party witnesses. As evidenced by its past practice, the Court will certainly allow a reasonable extension of time, if necessary, in which the Defendants can complete their discovery.

Further, the issues raised in the amendments are hardly technical. Expert witnesses will presumably not be required. This is already a complex case involving a myriad of intriguing and difficult legal and factual issues, as well as extensive discovery. To hold that the addition of these claims makes the case unduly expensive, patently unmanageable, or redoubtably complicated strains credulity, especially in light of the clear policy of achieving decisions on the merits and consolidating litigation among similar parties. I cannot conclude that Defendants would be "deprived of the opportunity to present facts or evidence which [they] would have offered" if the amendments had been earlier filed. *See Heyl & Patterson*, 663 F.2d at 426, *quoted in Butcher & Singer*, 105 F.R.D. at 453.

### 2. *Undue Delay*

Because, as noted *supra*, a showing of long delay may ameliorate the degree of prejudice which a nonmovant must establish in order to defeat the proposed amendment, there is a serious dispute as to when P & G was in possession of sufficient information upon which to base a claim for relief.

P & G argues that it was not in possession of sufficient information upon which to state a claim for relief because the Defendants concealed the relevant information. Defendants counter that they provided the needed information at the outset of discovery and that P & G has squandered the opportunity to develop the issue. To these arguments, P & G replies that while it may have known of some of the actions upon which its claims are based, it did not know of the allegedly improper methods used by Defendants until extensive discovery had been undertaken.

In essence, Defendants would have the Court believe that P & G has known of the bases for this cause of action from the outset and waited either (1) for the tactical reason of placing Defendants at a discovery and/or trial preparation disadvantage; or (2) because it considered success

---

12. The Court: Mr. Lee, tell me again about how much discovery you need. Will it be done by April 1?
Mr. Lee: Your Honor, please, the answer is yes, we will be finished by April, subject to one qualification. [Resolution of a motion to compel discovery presently under advisement].
D.I. 591 at 78.

on the merits of the claims unlikely and decided to assert the claims only after the other unfair competition claims began to look weak. The short answer to the second contention is that the ultimate decision as to success on the merits of either claim is an issue for trial and not for resolution at this procedural juncture.

Defendants point to interrogatories filed on the same day as the complaint which seek factual information regarding the alleged misconduct before the PTO as evidence of P & G's knowledge of the alleged misconduct in 1984. P & G counters that it had insufficient evidence to support a claim and, further, that Defendants did not promptly and fully respond to the interrogatories. As such, P & G argues that any delay was caused by Defendants' tardiness in responding.

The issue of undue delay is inherently ambiguous. Any consideration of it frequently necessitates an inquiry into the applicability of Rule 11 and the incidental issues of dilatory motive, unfair surprise or bad faith. It is difficult, even through the gift of hindsight, for the Court to determine precisely when counsel possessed sufficient information upon which to base an amendment. Rule 11 mandates that upon signing a pleading, an attorney asserts that "to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law." Fed.R.Civ.P. 11.

For the most part, it is undisputed that P & G knew about the activities in the PTO which form the basis for the present amendments at or about the time it filed its complaint. At argument, counsel for P & G acknowledged that P & G knew that its patent was blocked at the last minute in 1983 and that P & G had previously represented to the Court that the delay was part of a "scheme" to preempt P & G in the marketplace. D.I. 591 at 48–49. Nabisco and Keebler thus contend that P & G had sufficient information upon which to base the amendments in June, 1984. P & G counters that while it knew about the activities in the PTO, it did not know that those activities were "based on slanted affidavits,

false tests, misleading data, [and] withheld documents." *Id.* at 49.

Based upon the present record, it appears that there has been some degree of delay by P & G. It is difficult to determine how much of that delay resulted from a lack of diligence by P & G, strict adherence to the guidelines of Rule 11, or incomplete discovery. Several facts are, however, apparent. P & G has known about the possession of the '862 patent by Nabisco at least since the Government's reply to its Freedom of Information Act request dated May 27, 1983. P & G admits that it has known since 1983 about the activities of Defendants in the Patent Office prior to the issuance of the '333 patent and certainly prior to the filing of the instant lawsuit. For example, in its request for a coordinated discovery plan filed contemporaneously with the complaint, P & G detailed Nabisco's attempts to block the issuance of the '333 patent. *See* D.I. 4. As such, it appears that P & G has been aware of the potential for this basis of relief for several years. Other than its discovery requests, *i.e.*, interrogatories filed with the complaint in 1984, P & G has not indicated to the Defendants that it would pursue this avenue for relief.

Nonetheless, given the amount of time already devoted to the instant lawsuit and the relative lack of complexity involved in these issues, on the present record it is difficult for the Court to conclude that the delay has been sufficiently undue to greatly reduce the degree of prejudice which Defendants must show. The amendments have not occurred on the eve of trial nor have they greatly altered the legal theories for relief. Trial tactics may well have played a role in the timing of the motions but, again, the record does not permit a conclusion that the delay was undue. The Court's interest in securing a proper decision on the merits would certainly outweigh any delay.

### 3. *Bad Faith or Dilatory Motive*

There is some confusion as to the presence of bad faith on the part of P & G. On the record at the hearing, counsel for Na-

bisco indicated that Defendants had no proof of bad faith on the part of P & G.[13] Yet, in their brief, Nabisco and Keebler argue that the assertion of a new factual theory after an original factual theory has failed amounts to bad faith. As noted *supra,* the success or failure of P & G's original unfair competition allegations is an issue for trial. Other than Defendants' bald assertions regarding the likelihood of success, there is no indication that the original claims are spurious or unsupported. Significantly, none of the Defendants has moved under Rule 12(b)(6) for dismissal of that portion of the complaint. Nor has any Defendant moved for summary judgment on the issue. The Court finds no evidence of bad faith by P & G in bringing the present motions.

Likewise, given the protracted nature and complexity of this litigation, both sides have sought extensions and have in a sense "delayed" its final outcome. I find no evidence to indicate that these motions are simply a delaying tactic. Hence I cannot conclude that there was dilatory motive by P & G.

#### 4. *Futility*

As noted *supra,* in *Foman,* the Supreme Court indicated that in using its discretion under Rule 15(a), the District Court is free to consider the "futility of the amendment" in exercising its discretion. There is some dispute among courts as to how proposed amendments should be judged, *i.e.,* whether denial should result only if the claim is frivolous on its face or if the proposed amendment would not withstand either a Rule 12(b)(6) or Rule 12(f) motion to dismiss. *See* 3 J. Moore's *Federal Practice* ¶ 15.08[4] (1985). The Third Circuit has held that a trial court may properly deny leave to amend the pleadings if the proposed amendment would not withstand a motion to dismiss, *Massarsky v. General Motors Corp.,* 706 F.2d 111, 125 (3d Cir.),

*cert. denied,* 464 U.S. 937, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983), or if it fails to state a cause of action. *Adams,* 739 F.2d at 864.

##### a. *Rule 12(b)(6)*

The standards for deciding a Rule 12(b)(6) motion are well established. For the purposes of deciding a Rule 12(b)(6) motion, the Court must take all factual allegations in the complaint as true and may dismiss the complaint only if it appears certain that no relief could be drawn under any set of facts that Plaintiff could prove. *D.P. Enterprises v. Bucks County Community College,* 725 F.2d 943, 944 (3d Cir.1984); *Johnsrud v. Carter,* 620 F.2d 29, 33 (3d Cir.1980) (citing *Conley v. Gibson,* 355 U.S. at 45–46, 78 S.Ct. at 101–02); *see Bernstein v. IDT Corp.,* 582 F.Supp. 1079, 1082 (D.Del.1984). Reasonable factual inferences are to be drawn in favor of the pleader. *D.P. Enterprises,* 725 F.2d at 944.

Defendants argue that P & G's proposed amendments as they relate to alleged fraud on the PTO fail to state a cause of action. In the main, their contention is that their actions in petitioning the PTO were proper and that any information which they received was properly obtained. To this end, any action before the PTO amounted to a legitimate petitioning of a government body.

Nonetheless, these contentions address the merits of P & G's claims. Without reaching the merits, the Court is unconvinced that P & G's motion fails to state a cause of action. Surely Defendants cannot argue that the first amendment protects their right to make fraudulent representations to the PTO in order to forestall a competitor's entry into the marketplace. This is the gist of P & G's allegations. This case presents the novel situation wherein the patentee's competitors allegedly misappropriated confidential information and then used it against P & G. Taking the pleaded facts as well-founded, P &

---

13. *See* D.I. 591 at 63. On December 29, 1986, some six months *after* P & G filed the motions for leave to amend, Nabisco sought discovery of "Plaintiff's Basis for Count IV of the Complaint." D.I. 543. Counsel apparently sought discovery earlier but was blocked by P & G and

hence was compelled to file a formal motion. The Court has taken that motion under advisement. I am, however, unwilling to delay a decision regarding leave to amend after Nabisco waited some six months before seeking to compel discovery on the issues presented.

G's allegations do state a viable cause of action for unfair competition.[14]

### b. *Statute of Limitations*

▮▮▮ Ordinarily the defense of statute of limitations is pleaded affirmatively as a separate defense. If, however, the essential facts appear on the face of the pleading, courts may allow the bar to be raised pursuant to a Rule 12(b)(6) motion. *See Searight v. State of N.J.*, 412 F.Supp. 413, 414 (D.N.J.1976); *see also Pinehurst Airlines, Inc. v. Resort Air Serv. Inc.*, 476 F.Supp. 543, 550 (M.D.N.C.1979) (noting 2A J. Moore's *Federal Practice* ¶ 12.10); *Shires v. Magnavox Co.*, 74 F.R.D. 373 (E.D.Tenn.1977). In the context of amendments, Professor Moore contends that "if an objection is made that the claim or defense is barred by the statute of limitations, and does not relate back under Rule 15(c),[15] it is proper, upon the motion for leave to amend, for the court to consider whether the amendment would relate back." 3 J. Moore *Federal Practice* ¶ 15.08[4]. Professor Moore's reasoning is based on judicial economy. It would be tantamount to a mere formality to grant leave to amend and then require the non-movant to move to dismiss the claim as time barred. *Id.*

In this case, Defendants have raised the defense of statute of limitations. While to simply delay decision until there is a formal motion to dismiss on the basis of the applicable statute of limitations would be "wasteful formality," *see Middle Atlantic Utilities Co. v. S.M.W. Development Corp.*, 392 F.2d 380, 385 (2d Cir.1968), in this instance, postponing consideration of the relation back issue is not a mere formality.

Clearly, the statute of limitations either does or does not bar the cause of action. *See id.* at 385–86. The Court finds, after a careful review of the original complaints,

that the new allegations did *not* arise out of the same transaction or occurrence pleaded or sought to be pleaded in those original complaints. The original complaints contain no allegation of misappropriation of confidential information or other fraudulent conduct in the PTO in the claims for unfair competition. Paragraph 9 does contain general allegations that Defendants had knowledge of the pending patent. Paragraph 9 is incorporated by reference into Count IV. P & G thus contends that Defendants were on notice of the claim for the alleged misconduct in the PTO. Yet, paragraph 9 relates to the willfulness of the infringement and, as such, is directed to the potential recovery of attorneys' fees. As such, it does not provide adequate notice of the transaction or occurrence now alleged. The Court cannot agree with P & G's attempt to bootstrap the present allegations into the original complaint through paragraph 9.

Second, P & G argues that language in each of the original complaints that Defendants have engaged in "unfair competition with Procter & Gamble, *including* ...", followed by a recitation of acts of industrial espionage, in effect provided notice of the present claims. (Emphasis added). In essence, P & G argues that the transaction is "unfair competition" and that a blanket pleading to that effect is sufficient. The Court cannot agree.

Third, P & G argues that interrogatories filed on the same day as the complaint provided notice of the potential cause of action. Those interrogatories did not, however, provide a basis for recovery and, as such, did not fulfill the notice pleading requirement.

The purpose of Rule 15(c) is to avoid preclusion by the statute of limitations of additional information pleaded after, but related to, the original complaint. Under

---

14. Frito argues that its actions in obtaining a copy of the '862 patent were proper and that, as such, as to it, P & G's motion does not state a cause of action. Again, this is a factual question to be determined at trial.

15. Federal Rule of Civil Procedure 15(c) provides in relevant part that "[w]henever the claim

or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." Fed. R.Civ.P. 15(c).

the circumstances of this case, however, that principle is not applicable because the proposed amendments are separate and distinct allegations of unfair competition.

Nonetheless, having found that the proposed amendments do not relate back, the Court is faced with a dilemma. The defense of statute of limitations necessarily entails an inquiry into choice of law and characterization of claims, as well as concealment of information and other factual disputes. These issues simply are not adequately addressed in the extant briefs. Because the statute of limitations *may* bar the action, allowing a fuller exploration of the issues involved should not result in prejudice to any party. *See, e.g., Jenn–Air Products Co. v. Penn Ventilator, Inc.,* 283 F.Supp. 591, 596 (E.D.Pa.1968). Therefore, the Court cannot conclude, at this juncture, that the proposed amendments are barred by the statute of limitations.

**B.** *Frito–Lay's Alleged Participation in a Conspiracy*

■ Frito–Lay argues that P & G's new allegation of conspiracy, D.I. 304, ¶ 21(i),[16] injects a new issue into the lawsuit on which the interests of the Defendants are not aligned. As such, Frito–Lay contends that the addition of the conspiracy claim would unfairly prejudice it, and presumably the other Defendants as well, by driving wedges among them as the date for trial approaches. The gist of Frito–Lay's claim of unfair prejudice is twofold: (1) Defendants will be forced to face possible joint and several liability for civil conspiracy, a charge that pits them against each other; and (2) for the bulk of trial preparation, Defendants have cooperated with one another and have taken no discovery of one another.

P & G asserts that Frito–Lay's contentions go to the merits of the claim rather than the propriety of allowing the amendment and that, because Defendants have claimed a "community of interest" in order to shield intercorporate communications under the attorney-client privilege and work product doctrines, they should be held accountable for conspiracy.[17]

Civil conspiracy is a tort for which joint tortfeasors are held jointly and severally liable. *See Rose Hall, Ltd. v. Chase Manhattan Overseas Bank.,* 494 F.Supp. 1139, 1147 (D.Del.1980). In 1985, the Court concluded that bifurcation of the invalidity claims from the infringement and unfair competition claims would not serve the interests of efficient and expeditious dispute resolution. *See Procter & Gamble,* 604 F.Supp. at 1491–93. In so doing, the Court determined that a consolidated proceeding on all claims as to all Defendants would not result in confusion or prejudice. *Id.* The Court also noted that because this is a non-jury trial, any concerns that proof of facts of unfair competition as against one Defendant would prejudice the Court against the other Defendants were unwarranted. *Id.*[18]

As to the invalidity defense, each Defendant's interest is identical; namely, to prove that the '333 patent is invalid and hence unenforceable. On the issue of infringement, each Defendant likewise has a similar goal; namely, to prove that its cookies do not fall within the scope of the claims of the '333 patent. Finally, as to the claims of unfair competition related to acts of industrial espionage or conduct of each Defendant before the PTO, the interests are certainly comparable: proving that they did not engage in tortious or unlawful conduct. Hence, consolidation was appropriate as to these issues.

Without reference to the merits of P & G's claim, the result of the addition of proposed paragraph 21(i) would be to inject

---

**16.** "On information and belief, Frito–Lay assisted and conspired with Defendnts Nabisco and Keebler to unfairly compete with Procter & Gamble." D.I. 304, ¶ 21(i).

**17.** Interestingly, P & G also argues the merits of the claim. At oral argument, counsel relied on the community of interest. Also, on February 27, 1987, P & G forwarded a letter to the Court containing deposition testimony that it asserts supports the conspiracy allegation.

**18.** At that juncture, the alleged unfair competition was limited to simple acts of industrial espionage.

concerns over joint liability among the Defendants. The extensive cooperation of the past three years may potentially have revealed relevant information. Apparently, none of the Defendants has conducted discovery concerning the alleged conspiracy. Further, a close reading of the proposed amended complaints reveals that neither Nabisco nor Keebler is "charged" with this conspiracy.[19] Thus, as Frito–Lay argues, it appears that P & G is unable to point to any misappropriation of Patent Office information by Frito–Lay but seeks to draw Frito–Lay into the new allegations vicariously.

At this stage in the litigation, after extensive cooperation among the Defendants, these allegations are unfairly prejudicial and threaten to complicate the unfair competition component of the trial by forcing the Defendants to prove varying degrees of culpability.[20] As such, leave to add paragraph 21(i) to the complaint against Frito–Lay is denied.

Blank, Rome, Comisky & McCauley, P.C. by Stephen M. Orlofsky, Victoria J. Airgood, Cherry Hill, N.J., for plaintiffs.

LaBrum and Doak, P.C. by William F. Keating, Steven J. Blumenthal, Nancy Musser, Woodbury, N.J. and Capehart & Scatchard, P.A., by Thomas H. Morgan, Moorestown, N.J. for defendants.

---

**19.** The proposed amended complaints against Nabisco and Keebler aver that each of the companies shared information with one another and with Frito–Lay. *See* D.I. 370, ¶ 21(e)–(g); D.I. 301, ¶ 21(k). These averments do not state a claim for civil conspiracy but rather go to general allegations of unfair competition.

**20.** Similarly, I am not convinced that these concerns relate solely to proof of damages, which has been bifurcated for separate trial. Logic dictates that each Defendant will attempt to mitigate its liability at all stages of the litigation.