**SITE MICROSURGICAL SYSTEMS, INC., Plaintiff,**

v.

**The COOPER COMPANIES, INC., Defendant.**

### Civ.A. No. 90–660–JLL.

United States District Court, D. Delaware.

June 9, 1992.

James M. Mulligan, Jr., of Connolly, Bove, Lodge & Hutz, Wilmington, Del., and Harman Avery Grossman and Richard Savage of Patterson, Belknap, Webb & Tyler, New York City, of counsel, for plaintiff.

Donald F. Parsons, Jr., of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., and Thomas R. Boland and Ellen A. Efros of Vorys, Sater, Seymour & Pease, Washington, D.C., of counsel, for defendant.

## MEMORANDUM OPINION

LATCHUM, Senior District Judge.

The plaintiff, Site Microsurgical Systems, Inc. ("Site"), filed suit against the defendant, The Cooper Companies, Inc. ("Coo-

per") alleging patent infringement. Before the Court is plaintiff's motion to join its parent corporation, the Iolab Corporation ("Iolab"), as a party plaintiff under Rule 15. (Docket Item ["D.I."] 69; 70.) Site contends that the alleged infringement of its patent "also deprived Iolab of sales of collateral products which are dependent on the sales of Site's [patented] products." (D.I. 69 ¶ 14.)

The defendant opposes the amendment, contending that the motion is untimely, futile, and that it was filed for the purpose of delay. (D.I. 75; 84.) Moreover, the defendant asserts that the proposed amendment would significantly increase the complexity of the case, and, thereby, prejudice its interests. For the reasons stated below, the Court will deny plaintiff's motion to amend the complaint to join Iolab as an additional party plaintiff who seeks to recover damages for infringement of Site's patent.

## I. RELEVANT BACKGROUND FACTS

Site Microsurgical Systems, Inc. ("Site" or "patentee")[1] owns two patents by assignment:[2] (1) U.S. Patent No. 4,493,695 "Opthalmic Microsurgical System Cassette Assembly," and (2) U.S. Patent No. 4,627,-833 "Microsurgical System Cassette Assembly." (D.I. 1 ¶ 6, Exs. A, B; 69 ¶ 7; 84 at 2.) Site manufactures the TXR Modular Microsurgical System, an operating room equipment system used in ophthalmological microsurgery, using this patented technology. (D.I. ¶¶ 7, 9, 13; 69 ¶¶ 8–13, 15, Exs. A, B, C,; 70 at 3; 71 Rockley Decl. ¶ 7, Exs. A, B, C.) The TXR System includes a hand-held instrument, a cassette assembly that attaches to the hand-held instrument, a machine module[3] containing control components for the hand-held instrument, and a console which houses and supplies services and interconnections for the module. (D.I. 1 ¶ 7; 69 ¶ 8.)

Surgery requiring the use of Site's TXR System also involves the insertion of artificial intraocular lenses. (D.I. 69 Ex. 4 ¶ 13; 71 ¶ 13.) Iolab, the sole stockholder of Site and a wholly owned subsidiary of Johnson & Johnson, makes and sells artificial intraocular lenses which are used to replace damaged human lenses. (D.I. 69 Ex. 4 ¶ 12; 70 at 3; 71 ¶ 12.) Purchasers can, but are not required to, purchase both the Site ophthalmological surgical equipment and the Iolab intraocular lenses. (D.I. 71 Rockley Decl. at ¶¶ 19, 20; 70 at 6; 75 Ex. 4; 76 at 9–10, 81 at 7–11.) However, Site and Iolab argue that consumers routinely purchase both the Site equipment and the Iolab lenses as a package and that the markets are highly dependent on one another.[4] (D.I. 69 ¶ 14; 71 Rockley Decl. at ¶¶ 17, 21–22; 70 at 6–7, 76 at 9, 81 at 4.)

---

**1.** The Code provides that "the term 'patentee' includes not only the patentee to whom the patent was issued but also the successors in title to the patentee." 35 U.S.C. § 100(d). Thus, "legal title holder" is synonymous with "patentee." *Arachnid, Inc. v. Merit Industries, Inc.,* 939 F.2d 1574, 1578 n. 2 (Fed.Cir.1991).

**2.** The patent laws specifically provide for the transfer of rights. 35 U.S.C. § 261. Patent rights can be transferred either by assignment or by license. 3 P. Rosenberg, *Patent Law Fundamentals,* § 16.01[1] (2d ed. 1992). An assignment will be deemed to be a matter of federal patent law whereas a license will normally be governed by state-based contract law. *Id.* A patent owner can either assign his/her entire interest or assign an undivided portion, making the patentee and the assignees joint owners of the whole interest secured by the patent. *Calgon Corp. v. Nalco Chemical Co.,* 726 F.Supp. 983, 988 (D.Del.1989); 6 D. Chisum, *Patents: A Treatise on the Law of Patentability, Validity*

*and Infringement* § 21.03[2][a] (MB 1991) ("D. Chisum, *Patents*").

**3.** The equipment system involves a variety of modules for different surgical functions. The present dispute involves only the infusion/aspiration module ("I/A") and its corresponding cassette. (D.I. 1 ¶ 8; 69 ¶ 9; 70; 71 Rockley Decl. ¶ 8, Ex. C; 89 at 3.) The I/A module maintains the proper pressure within the eye during intraocular surgery by balancing the infusion of fluid into the eye and the aspiration of fluid from the eye. The module, with either mechanical or ultrasonic hand-held cutting tools, is used to cut the undesired tissue away from the eye and aspirate the undesired tissue out of the eye. A collection vessel in the cassette collects the undesired tissue and the aspirated fluid. (D.I. 1 ¶ 8; 69 ¶ 9; 70.)

**4.** From a marketing perspective, Site and Iolab assert that customers can efficiently purchase all surgical products from a single source and that this "one-stop shopping" builds a financial

Furthermore, Site and Iolab contend that they offer financing plans, which are customary in the medical supply industry, to ease the burden of the high cost of surgical equipment; amortizing the expensive purchase of a console against periodic purchases of relatively inexpensive lenses. (D.I. 69 Ex. 4 ¶ 20; 70 at 5; 71 ¶¶ 15, 21–22; 76 at 10, Ex. A at 53; 81 at 4–6.) Iolab contends that, were it not for being able to provide customers with Site consoles and cassettes, Iolab could not sell a large portion of its lenses. (D.I. 71 Rockley Decl. ¶ 18; 70 at 6; 89 at 4.) Therefore, Iolab argues that it has also been injured by Cooper's alleged patent infringement and that it should be fully compensated for the lost sales of its collateral products. (D.I. 69 Ex. 4 ¶ 16; 70 at 7.)

## II. DISCUSSION

■ Rule 15 of the Federal Rules of Civil Procedure favors amendment. *Adams v. Gould, Inc.*, 739 F.2d 858, 864 (3d Cir.1984), *cert. denied*, 469 U.S. 1122, 105 S.Ct. 806, 83 L.Ed.2d 799 (1985).[5] It provides, in pertinent part, that leave to amend "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). However, this liberal policy of granting leave to amend must not be interpreted to permit amendment without restraint. *Adams v. Gould, Inc.*, 739

F.2d at 864; *Strawhecker v. Laurel School District*, 100 F.R.D. 7, 10 (W.D.Pa.1983). An amendment should not be permitted if countervailing considerations exist such as undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice, or futility. *Foman v. Davis*, 371 U.S. at 182, 83 S.Ct. at 230.

■ Under Rule 15,[6] an amendment will be considered "futile" if it cannot withstand a motion to dismiss. *Jablonski v. Pan American World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir.1988); *Azarbal v. Medical Center of Delaware, Inc.*, 724 F.Supp. 279 (D.Del.1989). The standard for deciding a motion to dismiss is whether, taking all factual allegations as true, it is beyond doubt that the plaintiff can prove no set of facts to support his claim which would entitle him to relief. Fed.R.Civ.P. 12(b)(6); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Procter & Gamble Co. v. Nabisco Brands, Inc.*, 125 F.R.D. at 412 (citing *D.P. Enterprises v. Bucks County Community College*, 725 F.2d 943 (3d Cir.1984)). The facts alleged in the proposed amended complaint, and all reasonable factual inferences drawn from those facts, are construed in the plaintiff's favor. *Procter & Gamble Co. v. Nabisco Brands, Inc.*, 125 F.R.D. at 412.

A claim is not "futile" merely because it will be difficult to prove. In other words, the claim must be futile as a matter of law rather than merely unlikely as a matter of fact. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90

---

and marketing dependence. (D.I. 69 Ex. 4 ¶ 17; 71 ¶¶ 16–17, 22.) Iolab sends sales representatives from both Iolab and Site to prospective customers to jointly market the consoles, cassettes and lenses and to encourage sales of all products at one time. (D.I. 69 Ex. 4 ¶ 19; 71 ¶ 19.) Iolab maintains that its ability to package the products, and the resulting "one-stop shopping" phenomenon, motivated it to acquire Site in the first place. (D.I. 69 ¶ 18; 70 at 6; 71 Rockley Decl. ¶¶ 12, 18.) Allegedly, Iolab purchased Site so that it could sell consoles and cassettes and thereby boost its lens sales. (D.I. 81 at 4; 89 at 8.)

**5.** Third Circuit law controls procedural questions even though the Federal Circuit has juris-

diction over the substantive issue in dispute. *Procter & Gamble Co. v. Nabisco Brands, Inc.*, 125 F.R.D. 405, 408–9 n. 8 (D.Del.1987); *In re Int'l Medical Prosthetics Research Assoc., Inc.*, 739 F.2d 618, 620 (Fed.Cir.1984).

**6.** Permissive joinder of parties under Rule 20(a) contemplates a similar test. There must be: (1) an occurrence of some question of fact or law common to all parties, and (2) the existence of a right to relief predicated upon or arising out of a single transaction. *Mesa Computer Utilities, Inc. v. Western Union Computer Utilities, Inc.*, 67 F.R.D. 634 (D.Del.1975). As discussed *infra*, the Court is not convinced that Iolab has a right to relief under the patent laws and, therefore, the second test cannot be met.

(1974); *Outboard Marine Corp. v. Pezetel,* 535 F.Supp. 248, 252 (D.Del.1982). The issue involved in a motion to dismiss is not whether the plaintiff will ultimately prevail but whether he is entitled to present evidence in support of his claims. *Scheuer v. Rhodes,* 416 U.S. at 236, 94 S.Ct. at 1686. Here, the defendant argues that the proposed amendment would be futile and the Court agrees on two grounds. Iolab lacks standing to recover for patent infringement and the "Entire Market Value Rule" does not create standing for non-patent owners. Each ground is discussed separately *infra.*

### A. *Standing*

■ A patent is a creature of statute and it gives the legal title owner the right to exclude others from making, using or selling a patented invention. 35 U.S.C. §§ 101, 102, 151 (1984); *Arachnid, Inc. v. Merit Industries, Inc.,* 939 F.2d at 1578; *Crown Co. v. Nye Tool Works,* 261 U.S. 24, 35, 43 S.Ct. 254, 256, 67 L.Ed. 516 (1923). A patentee's statutory remedy for patent infringement is a civil action against the infringer brought on the patent. 35 U.S.C. § 281; *Arachnid, Inc. v. Merit Industries, Inc.,* 939 F.2d at 1578–79; *Calgon Corp. v. Nalco Chemical Co.,* 726 F.Supp. at 985 (patent owner or owner's assignee is real party in interest in action for patent infringement). In addition to the patentee, an exclusive licensee generally has stand-

ing to sue for infringement for the unauthorized use within the area of exclusivity. *Rite–Hite Corp. v. Kelley Co.,* 774 F.Supp. 1514, 1518, 1523–25 (E.D.Wis.1991); D. Chisum, Patents at § 21.03[2][C].[7] Parties who do not hold legal title to the patent during the time of infringement are not permitted to recover for patent infringement. *Arachnid, Inc. v. Merit Industries, Inc.,* 939 F.2d at 1579 (quoting III Robinson on Patents § 937 [1890]).[8]

■ Site is the owner by assignment of both patents at issue and the record does not reflect injury to Site as a result of any lost sales of intraocular lenses. (D.I. 1 ¶ 6.) Although Iolab is not an owner, assignee, or licensee of the patents at issue, it argues that it is closely related to the patented technology, that it anticipated sales of its intraocular lenses from the patented technology, and that it was directly injured from the alleged infringement. Based upon these alleged facts, Iolab argues that its direct interest in the litigation should be the touchstone of standing. (D.I. 85 at 12; 89.) The Court disagrees. While Iolab may have an interest at stake in the suit, Iolab does not claim to hold legal title to the patents at issue and, thus, it has no standing to sue for patent infringement. (D.I. 70 at 3; 89 at 5, 15.)

Iolab argues that "[b]ecause Iolab wholly owns Site, Iolab effectively has the rights

---

7. An exclusive licensee has legal grounds to prevent the patent owner from further licensing and from ignoring infringement within the area of exclusivity. D. Chisum, *Patents* at § 21.03[2][c]. The "exclusive licensee must be considered in equity as having a partial proprietary interest in the patent...." *Id.* (quoting *Philadelphia Brief Case Co. v. Specialty Leather Products Co.,* 145 F.Supp. 425, 428 (D.N.J.1956), *aff'd,* 242 F.2d 511 (3d Cir.1957)).

8. For example, the statutory scheme does not directly grant standing to mere licensees nor does it appear to contemplate any such suit. A mere licensee will not have standing to sue for patent infringement because he/she has no legal rights under the patent. *Crown Co. v. Nye Tool Works,* 261 U.S. at 37, 43 S.Ct. at 257; *Life time Doors, Inc. v. Walled Lake Door Co.,* 505 F.2d 1165, 1167 (6th Cir.1974) (mere licensee has no right to be joined in a suit for infringement); D. Chisum, *Patents* at §§ 21.03[2][d],

[2][f]. Standing is also not permitted as a matter of policy. As noted by the Second Circuit,

[i]t is indeed true that a mere licensee may have an interest at stake in such a suit; his license may be worth much more to him than the royalties which he has agreed to pay, and its value will ordinarily depend on his ability to suppress the competition of his rivals. The reason why he is not permitted to sue is not because he has nothing to protect. But against that interest is the interest of the infringer to be immune from a second suit by the owner of the patent; and also the interest of the patent owner to be free to choose his forum.... Indeed, the owner may have granted a number of licenses, and it would be exceedingly oppressive to subject him to the will of all his licensees. These two interests in combination have been held to overweigh any interest of the licensee.

*Id.* at § 21.03[2][d] (quoting *A.L. Smith Iron Co. v. Dickson,* 141 F.2d 3, 6 (2d Cir.1944)).

of all three of the classes of plaintiffs (owners, assignees and licensees)" and, therefore, it must have standing to sue directly for patent infringement. (D.I. 85 at 13.) The Court is not convinced, and the plaintiff offers no authority, that a parent corporation effectively has the patent rights of owners, assignees, and licensees by virtue of its ownership of a subsidiary holding a patent. The Court is not convinced, and the plaintiff offers no authority, that mere ownership of corporate stock gives a non-patent owner standing to sue for patent infringement.

Iolab asserts that an assignment of rights between the parties would have been a mere formality and, in reality, "it is Iolab who effectively controls the patents and who ultimately suffers the loss from Cooper's infringement." (D.I. 85 at 13; 89.) In effect, Iolab argues that it is the "real party in interest" and that it has standing under the test in *Kalman v. Berlyn Corp.*, 914 F.2d 1473 (Fed.Cir.1990). In *Kalman,* an inventor of a patented technology formed an entity ("PDL") to manufacture and market the patented device. *Id.* at 1475. The inventor and his brother were the sole directors of PDL and each owned 50% of PDL's stock. The defendant approached the inventor for a license but the inventor refused to grant one. The defendant then began to sell similar technology and the inventor initiated suit for patent infringement. The trial was bifurcated and, at the damages trial, the district court denied the inventor's motion to add PDL because it questioned whether PDL was an exclusive licensee. *Id.* at 1477. The Federal Circuit reversed, concluding that although a non-exclusive licensee of a patent has no standing to sue for infringement, the mere non-exclusivity will not preclude

recovery where the sole licensee is recognized as the real party in interest. *Id.* at 1482. Such recognition is based upon: (1) direct damage to the sole licensee by an infringer in a two supplier market, and (2) a close nexus between the sole licensee and the patentee.

However, Iolab possesses no license of any kind and it is not marketing the patented technology on behalf of the patentee. Iolab's only connection to the patented technology is its attenuated relationship through corporate ownership. The Court is not convinced, and the plaintiff offers no authority, that mere ownership of corporate stock makes the parent corporation a "real party in interest." Site holds legal title to the patents and it is a separate, operational corporation. (D.I. 89 at 4.) Iolab cannot be deemed to "effectively control the patent" merely because it owns and exercises control over its subsidiary. This is especially true when Iolab itself is wholly owned by another corporation. Additionally, Iolab's argument fails to offer authority to support the proposition that a mere close nexus between a patentee and a third-party lacking any patent rights is sufficient under the statutory scheme. The Court is not persuaded that the patent laws are designed to compensate every party "related" to the patented technology or every party who "anticipates" the sale of the patented products.[9]

Based upon the facts and circumstances of this case, the Court finds that Iolab has no standing to sue for patent infringement and that Site has suffered no injury to warrant consideration of lost intraocular lens sales. The Court declines to find a mere parent-subsidiary relationship or a mere anticipation of a sale to be sufficient

9. Taking plaintiff's argument to logical extremes, a competing lens manufacturer may also have "anticipated" the sale of the Site equipment systems and may also have been "directly injured" by the alleged infringement. Site argues that if the products are "dependent" and reasonably "anticipated" then the EMVR should permit recovery even without the corporate connection or the "close nexus." (D.I. 89 at 7.) As discussed *infra,* this clearly exceeds current law and runs counter to the exclusivity concept of patent law. Another extreme might be if John-

son & Johnson had a collateral product involved in ophthalmological surgery for which it sought recovery due to its ownership of Iolab. For example, under the plaintiff's argument, if Johnson & Johnson sold bandages used in surgery as part of a "package," then it could also sue for patent infringement for the lost sales as well even though these consumable, fungible supplies are readily available from many competitors in the marketplace and even though it is two corporate tiers away from the patent.

to confer standing to sue for alleged patent infringement. Therefore, the Court holds that the proposed amendment would be futile and that the motion under Rule 15 must be denied.

### B. *Entire Market Value Rule*

■ In an action for patent infringement, the measure of damages is the amount which will compensate the *patent owner* for pecuniary loss sustained because of the infringement. 35 U.S.C. § 284; *State Industries, Inc. v. Mor–Flo Industries, Inc.*, 883 F.2d 1573, 1577 (Fed.Cir. 1989), *cert. denied*, 493 U.S. 1022, 110 S.Ct. 725, 107 L.Ed.2d 744 (1990). Under certain circumstances, the measure of damages may include pecuniary loss from collateral components or products. *Westinghouse Electric & Mfg. Co. v. Wagner Electric & Mfg. Co.*, 225 U.S. 604, 614, 32 S.Ct. 691, 694, 56 L.Ed. 1222 (1912) (plaintiff entitled to recover for all profits where patent gives value to the entire combination). To ensure full compensation of the *patent owner*, courts have adopted the "Entire Market Value Rule" ("EMVR").

■ Under the EMVR, "[t]he ultimate determining factor [in determining whether the non-patented features should be included in calculating compensation for infringement] is whether the patentee or its licensee can normally anticipate the sale of the unpatented components together with the patented components." *Kori Corp. v. Wilco Marsh Buggies & Draglines, Inc.*, 761

F.2d 649, 656 (Fed.Cir.), *cert. denied*, 474 U.S. 902, 106 S.Ct. 230, 88 L.Ed.2d 229 (1985) (quoting *Tektronix, Inc. v. United States*, 552 F.2d 343, 351–52, 365 (Ct.Cl. 1977)); *TWM Mfg. Co., Inc. v. Dura Corp.*, 789 F.2d 895, 901 (Fed.Cir.) ("Where a hypothetical licensee would have anticipated an increase in sales of collateral unpatented items because of the patented device, the patentee should be compensated accordingly"), *cert. denied*, 479 U.S. 852, 107 S.Ct. 183, 93 L.Ed.2d 117 (1986).

> Under the entire market value rule, it is not the physical joinder or separation of the contested items that determines their inclusion in or exclusion from the compensation base, so much as their financial and marketing dependence on the patented item under standard marketing procedures for the goods in question.

*Leesona Corp. v. United States*, 599 F.2d 958, 974–75 (Fed.Cir.1979), *cert. denied*, 444 U.S. 991, 100 S.Ct. 522, 62 L.Ed.2d 420 (1979). When the patents are of such paramount importance that they substantially create the value of the unpatented product, sale of the unpatented product may be reasonably anticipated.[10] An industry practice to purchase the entire line of products, including auxiliary equipment, may also provide a sufficient bases to "anticipate" unpatented, collateral sales.[11]

■ The EMVR, however, does not permit misuse of the patent and extension of the patent monopoly beyond the terms

---

**10.** *Westinghouse Electric & Mfg. Co. v. Wagner Electric & Mfg. Co.*, 225 U.S. at 614–15, 32 S.Ct. at 694 (damages calculated on the whole machine because the entire value of the machine is legally attributable to the patented feature); *Tektronix, Inc. v. United States*, 552 F.2d at 351–52, 365 (when component is useless without patented product and financially dependent on the market created by the patented product, recovery for the unpatented component should be permitted); *Kori Corp. v. Wilco Marsh Buggies & Draglines, Inc.*, 761 F.2d at 656 (can normally anticipate sale of both patented and unpatented components when no independent use of unpatented structure); *State Industries, Inc. v. Mor–Flo Industries, Inc.*, 883 F.2d at 1580 (damages are based on the value of the entire apparatus, not just the patented products, where the patent related feature is the basis for consumer demand).

**11.** *Kalman v. Berlyn Corp.*, 914 F.2d at 1485 (filler screens designed for use with patented device, guarantee of patented product required purchase of patented device, and filler screens usually sold with patented device); *Paper Converting Machine Co. v. Magna–Graphics Corp.*, 745 F.2d 11, 23 (Fed.Cir.1984) (recovery permitted for auxiliary equipment, even though the second product was not an integral part of the patented technology, where substantial evidence showed the entire industry routinely purchased both products so as to ensure a single source of responsibility); *Leesona Corp. v. United States*, 599 F.2d at 975 (unpatented product necessary to keep patented product in operation and standard government practice to order entire package of products; it was not unlikely that the patent holder anticipated the additional income from the non-patented parts).

of the grant. *Deere & Co. v. Int'l Harvester Co.*, 710 F.2d 1551, 1559 (Fed.Cir.1983). The rule does not allow a patentee to create a limited monopoly in a related market, restraining competition of unpatented articles in that related market [12], nor does it permit a patentee to restrict the subsequent repair of individual unpatented parts.[13] The EMVR also cannot be used to overextend "the protection and financial rewards of the patent laws [to] ... embrace fungible component parts which are independent of the patent." *Leesona Corp. v. United States*, 599 F.2d at 973–74; *Signode Corp. v. Weld–Loc Systems, Inc.*, 700 F.2d 1108, 1114 (7th Cir.1983) (rule should not extend to lost sales of unpatented, consumable supplies because not contemplated by patent law). The rule merely recognizes the actual economic value of the patented technology. *Paper Converting Machine Co. v. FMC Corp.*, 432 F.Supp. 907, 913 (E.D.Wis.1977), *aff'd*, 588 F.2d 832 (7th Cir.1978).

 Plaintiff contends that Iolab has standing by virtue of the EMVR. (D.I. 85 at 12–14; 89 at 6, 10.) Iolab does not argue that its lenses are a component of the Site equipment system at issue nor does it contend that the lenses derive their utility and value from the patented equipment system or that the consumer demand for its collateral product is created by Site's patented technology. Rather, Iolab argues that its product is closely related to the patented technology and that it is customary in the industry to purchase both products as a package. Thus, Iolab argues that it anticipated the sale of the unpatented lenses with the sale of the patented

equipment systems and that it suffered a significant and quantifiable loss of lens sales due to the alleged infringement. (D.I. 70 at 6–7; 89 at 21 Rockley Decl. at ¶¶ 16–18, 23; 76 at 8, 81 at 4.) To ensure full compensation, Iolab argues that the full measure of damages for the alleged infringement must include Iolab's loss under the EMVR.

For support, plaintiff cites to *TWM Mfg. Co., Inc. v. Dura Corp.*, 789 F.2d 895 (Fed. Cir.), *cert. denied*, 479 U.S. 852, 107 S.Ct. 183, 93 L.Ed.2d 117 (1986). In *TWM*, the company with legal title to a patent sued for patent infringement. The district court found egregious behavior and willful infringement on the part of the defendant. *Id.* at 897. On appeal, the defendant challenged the damages awarded. *Id.* at 898. More specifically, the defendant claimed that the royalty base erroneously included unpatented components of the patented equipment which were not manufactured by the patent owner. The patent owner "merely provided them as a 'convenience to its customers.'" *Id.* at 900–901.

The Federal Circuit rejected the defendant's argument that "the inclusion of unpatented items in the royalty base or lost profits determination is dependent on who manufactures those items, or on whether they are supplied for 'convenience.' *Id.* at 901. The Federal Circuit stated that it is the dependence of the items and the reasonable anticipation which should control. It further found that a correlation was shown to exist because the defendant did not show how many, if any, of the patented devices were sold without the unpatented components. *Id.* at 901. Because of this,

---

12. *See Morton Salt Co. v. G.S. Suppiger Co.*, 314 U.S. 488, 491, 62 S.Ct. 402, 404, 86 L.Ed. 363 (1942) (the patent affords no immunity for a monopoly not within the grant); *Mercoid Corp. v. Mid–Continent Invest. Co.*, 320 U.S. 661, 666, 64 S.Ct. 268, 271, 88 L.Ed. 376 (1944) (cannot require that certain unpatented wares go into the patented product). The alleged dependency between the patented system and the lenses does not appear to constitute an improper tie. Site and Iolab maintain, and Cooper does not offer evidence to dispute, that the purchase of both the equipment system and the intraocular lenses is not required. The record also does not

reflect that Site is using its patented technology to create a limited monopoly of the intraocular lens market.

13. *See Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 345–6, 352, 81 S.Ct. 599, 604, 607–08, 5 L.Ed.2d 592 (1961) (patented item can be repaired and maintained with unpatented staple items); *King Instrument Corp. v. Otari Corp.*, 767 F.2d 853, 865–66 (Fed.Cir.1985) (spare parts to replace parts destroyed with normal use must be distinguished from parts which derive their existence and value from the patent), *cert. denied*, 475 U.S. 1016, 106 S.Ct. 1197, 89 L.Ed.2d 312 (1986).

the infringing sales could not have been apportioned had such apportioning been appropriate. *See Westinghouse Electric and Manufacturing Co. v. Wagner Electric and Manufacturing Co.,* 225 U.S. at 614–15, 32 S.Ct. at 694 (when "plaintiff's patent only created a part of the profits, he is only entitled to recover that part of the net gains").

*TWM* is distinguishable from the present case. Iolab does not hold legal title to the patent, as did the plaintiff in *TWM,* and Site does not provide intraocular lenses as a mere convenience to its customers. Iolab directly bills lens purchasers and ships orders to the lens purchasers. (D.I. 71 Rockley Decl. ¶ 21.) Iolab also maintained the contracts. (D.I. 71 Rockley Decl. ¶ 21.) Defendant Cooper contends that the EMVR cannot be construed to circumvent the standing requirement and the Court agrees. The EMVR involves the extent of compensation rather than a party's entitlement to compensation. Since Iolab has no right of recovery under the patents at issue, as discussed *supra,* it has no right to invoke the EMVR and Site and Iolab present no authority which permits a manufacturer of a separate and distinct product, who has no rights under the patent, to recover patent infringement damages pursuant to the "entire market value rule."

Plaintiff and Iolab invite the Court to expand the EMVR to create standing where none currently exists but acceptance of this invitation would not be an appropriate function of the Court. If Plaintiff and Iolab are dissatisfied with the statutory scheme, they should pursue redress from Congress. Iolab's lack of rights under the patents at issue precludes the application of the EMVR in this patent infringement action. Because Iolab lacks standing, the proposed amendment is futile and must not be permitted.

## III. CONCLUSION

This Court concludes that Iolab has no standing to recover for any alleged patent infringement and that the "Entire Market Value Rule" does not create standing. Therefore, the proposed amendment would be futile and the plaintiff's motion must be denied.[14]

The defendant's conditional motion seeking bifurcation of the damages liability issues, if the Court permitted plaintiff to amend its complaint to add Iolab as a plaintiff, will be denied as the condition was not met.

An order will be entered in accordance with this Memorandum Opinion.

---

**14.** In view of the Court's ruling above, it is unnecessary to consider defendant's contention that the motion to amend should be dismissed on the grounds of delay and prejudice.