William SEIDEL, Plaintiff,

v.

Thomas H. LEE, Thomas H. Lee Advisors, Inc., ML–Lee Acquisition Fund, L.P., Vernon R. Alden, Joseph L. Bower, Stanley H. Feldberg, ML Mezzanine, Inc., Mezzanine Investments, L.P., ML Fund Administrators, Inc., Merrill Lynch, Pierce, Fenner & Smith, Inc., Merrill Lynch & Co., Inc., John W. Childs, Thomas R. Shepherd, David V. Harkins, Glenn H. Hutchins, C. Hunter Boll, Scott A. Schoen, Wendy L. Masler, Lester Schoenfeld, Kevin K. Albert, Jerome P. Green, J. Huston McCollough II, Rosalie Y. Goldberg, Joseph J. Aurilia, James V. Caruso, Mark M. Collins, Joseph W. Sullivan, Emily L. Wong, Margaret A. Burke, Robert T. Discolo, Matthew D. Castagna, and Patricia A. Quane, Defendants.

Civil Action No. 93–494–JJF.

United States District Court, D. Delaware.

Dec. 30, 1996.

leaves any division of the damages award to the    Plaintiffs.

Pamela S. Tikellis, James C. Strum, Chimicles Jacobsen & Tikellis, Wilmington, DE, Michael J. Freed, Carol V. Gilden, Much Shelist Freed Denenberg & Ament, Chicago, IL, William J. French, Glen E. Lavy, Conant Whittenburg French & Schachter, S.C., Milwaukee, WI, James S. Youngblood, Youngblood & Associates, Atlanta, GA, for Plaintiff.

Stephen E. Herrmann, Richards Layton & Finger, Wilmington, DE, Sanford F. Remz, Richard S. Nicholson, Alan J. Cooke, Marc G. Guggenheim, Hutchins Wheeler & Dittmar, Boston, MA, for Defendants Thomas H. Lee Advisors Inc., Thomas H. Lee, John W. Childs, Thomas R. Shepherd, David V. Harkins, Glenn H. Hutchins, C. Hunter Boll, Scott A. Schoen, and Wendy L. Masler.

Kenneth J. Nachbar, Morris Nichols Arsht & Tunnell, Wilmington, DE, James N. Benedict, Mark Holland, Mark A. Kornfeld, Mark R. Anderson, Rogers & Wells, New York City, for Defendants ML Mezzanine, Inc., Mezzanine Investments, L.P., ML Fund Administrators, Inc., Merrill Lynch, Pierce, Fenner & Smith, Inc., Merrill Lynch & Co., Inc., Lester Schoenfeld, Kevin K. Albert, and Matthew D. Castagna.

Michael D. Goldman, Stephen C. Norman, Potter Anderson & Corroon, Wilmington, DE, John D. Donovan, Jr., John Baraniak, Jr., Michael P. Allen, Ropes & Gray, Boston, MA, for Defendants ML–Lee Acquisition Fund, L.P., Vernon R. Alden, Joseph L. Bower, and Stanley H. Feldberg.

## OPINION

FARNAN, Chief Judge.

Presently before the Court are two related motions in this action for violation of the Investment Company Act of 1940 ("ICA"), breach of contract, breach of fiduciary duty, and fraud. After a brief overview of the factual background, the Court will address the Motion To Strike Or Dismiss The Second Amended Class Action Complaint pursuant to Rule 12(f) and Rule 12(b)(6) filed by all the Defendants in this action. (D.I. 77, 78). Then, the Court will address the Motion To Dismiss The Second Amended Class Action Complaint ("SAC") filed by the Merrill Lynch and Independent General Partner Defendants. (D.I. 74).

### STATEMENT OF FACTS

Plaintiff William Seidel, an investor in the ML–Lee Acquisition Fund, L.P. ("Fund I"), filed his initial Complaint on October 14, 1993, alleging violations under various provisions of the Investment Company Act ("ICA") and claims under state law. On December 10, 1993, Plaintiff filed an Amended Complaint by right. In an Order dated September 30, 1994 (D.I. 40) and Memorandum Opinion dated October 14, 1994 (D.I. 42), the Court granted in part and denied in part Defendants' Motion to Dismiss the Amended Complaint. With leave of Court, Plaintiff filed the SAC on November 3, 1995. The instant motions to strike or dismiss the SAC ensued.

### DISCUSSION

### I. The Standards for a Motion to Strike and a Motion to Dismiss

Regarding a motion to strike, Rule 12(f) provides that "the court may order stricken from any pleading ... any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). However, such motions are generally disfavored, unless the matter is clearly irrelevant to the litigation or will prej-

udice the adverse party. *See Rechsteiner v. Madison Fund, Inc.,* 75 F.R.D. 499, 505 (D.Del.1977); *Schwarzkopf Tech. Corp. v. Ingersoll Cutting Tool Co.,* 820 F.Supp. 150, 154 (D.Del.1992).

Pursuant to Rule 12(b)(6), the Court may dismiss a pleading for failure to state a claim upon which relief may be granted. Fed. R.Civ.P. 12(b)(6). Under this rule, the Court must accept as true all well-pleaded facts in the complaint and must construe the allegations in the light most favorable to the Plaintiff. Thus, dismissal is warranted only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *In re Donald J. Trump Casino Sec. Litig.,* 7 F.3d 357, 368–69 (3d Cir.1993), *cert. denied,* 510 U.S. 1178, 114 S.Ct. 1219, 127 L.Ed.2d 565 (1994).

With these standards in mind, the Court will decide the instant motions.

### II. All Defendants' Motion to Strike or Dismiss the SAC

#### A. *Whether Plaintiff's ICA Claims Are Time–Barred*

Defendants argue that Plaintiff's SAC does not comply with this Court's October 14, 1994 decision, in that it retains claims based upon several pre-October 14, 1990 transactions, which the Court dismissed as time-barred. *See Seidel v. Lee,* No. 93–494, 1994 WL 913930, slip op. at 2–3 (D.Del. Oct. 14, 1994). As relief, Defendants urge the Court to strike the SAC and order Plaintiff to file a revised pleading that complies with the Court's prior rulings.

In response, Plaintiff argues that the SAC fully complies with the Court's opinion with the exception of two errors which he withdraws.[1] Although all of the alleged background facts, some of which pre-date October 14, 1990, are incorporated by reference in each count of the SAC, Plaintiff contends that the averments made in the substantive

---

1. First, Plaintiff withdraws the allegation in paragraph 157 of Count I pertaining to an issuance of a letter of credit on October 12, 1989 for $4,000,000 on behalf of BeefAmerica in the BeefAmerica IV Transactions. Second, Plaintiff withdraws any portion of the Lee–GN I Transaction from Counts I and III, that was consummated and completed before October 14, 1990. Therefore, Defendants' arguments as to the inclusion of these transactions are moot.

portions of Counts I, III, IV, V, and VII, refer only to transactions that occurred after October 14, 1990.[2] Regarding Counts II and VI, Plaintiff argues that the SAC asserts "new" theories, which the Court's prior opinion did not address.[3]

### 1. Counts I, III, IV, V and VII

■ Technically, Plaintiff is correct that the averments defining the ICA violations in Counts I, III, IV, V and VII, only refer to post-October 14, 1990 transactions. However, as Plaintiff concedes, the factual background, which refers to pre-October 14, 1990 transactions, is incorporated by reference in each of these Counts.

In this action, the Court has viewed each alleged transaction as a discrete, potential violation of the ICA. *Seidel,* slip op. at 6. In accord with this position, the Court has also determined that claims based upon transactions occurring prior to October 14, 1990, are time-barred. Given this approach, the Court concludes that the pre-October 1990 factual information relating to these time-barred transactions is irrelevant to the claims asserted. In particular, the Court believes that the inclusion of these time-barred transactions serves no purpose other than to potentially confuse a jury or prejudice Defendants. Therefore, pursuant to Rule 12(f), the Court orders stricken all pre-October 14, 1990 references in the SAC.

### 2. Count II

■ In discussing Count II, Plaintiff asserts that a Section 56(a) claim addresses whether the fund was a validly constituted Business Development Corporation ("BDC") from its inception. Because Plaintiff contends that the Court's prior ruling only applied to specific transactions, Plaintiff argues that the Court did not address this "novel" approach, which views the fund in its entirety. *See Seidel,* slip op. at 7 (dismissing those "counts of the Complaint that are premised on liability resulting from transactions that occurred prior to October 14, 1990"). As a

remedy for this violation, Plaintiff argues for rescission of the investment under Section 47(b)(2).

In response, Defendants allege that Plaintiff is attempting to evade the Court's order by asserting that Section 56(a) claims are not based on specific transactions. By distinguishing the validity of the BDC as a whole, from a distinct transaction, Defendants contend that Plaintiff is reasserting the continuous wrong theory, which the Court has previously rejected.

Even if the Court accepts Plaintiff's characterization that Section 56(a) implicates the validity of the BDC and that the alleged validity of the BDC is distinct from specific transactions, Plaintiff's claim would be time-barred. In its prior opinion, the Court stated that the applicable limitations period for Plaintiff's causes of action in this complaint is one year from discovery and three years from the alleged wrong. *See Seidel,* slip op. at 5. Because the alleged failure to create a valid BDC occurred in 1987, six years before the Original Complaint was filed in this matter, the claim would be time-barred.

Thus, to survive dismissal, Plaintiff's Section 56(a) claim necessarily relies on the application of the continuing wrong doctrine. Indeed, Plaintiff expressly avers the continuing wrong theory in paragraph 161 of Count II of the SAC which states: "A majority of the general partners of Fund I were, in fact, interested persons of Fund I. As a result, Fund I does not qualify as a validly constituted BDC. Defendants have engaged in a *continuous violation* of § 56(a) throughout the Class period." (emphasis added).

First and foremost, this Court has already rejected the application of the continuing wrong doctrine to Plaintiff's ICA claims. *See Seidel,* slip op. at 5–6. The Court is not convinced that Plaintiff's "new" theory in Count II should be treated differently than the other ICA claims alleged. In addition, as Defendants correctly suggest, application of the continuing wrong doctrine in this context

---

**2.** Counts I, III, IV, V and VII allege violations of the ICA under the following provisions: § 36(a), § 57(a), § 57(d), § 17(j) and Rule 17j–1(a)(4), and § 37, respectively.

**3.** Count II alleges a violation of § 56(a) of the ICA. Count VI alleges a violation of § 17(j) and Rule 17j–1(a)(1)–(3) of the ICA.

would make the limitations period a nullity with respect to Section 56(a) claims where allegedly interested persons of a BDC remain as general partners. Such a result would be at odds with the very purpose of a limitations period. *See Blatt v. Merrill Lynch*, 916 F.Supp. 1343, 1352 (D.N.J.1996) (rejecting application of continuous wrong theory to nonregistration claims under ICA because it would annul application of limitations period). Moreover, application of the continuous wrong doctrine in this context would frustrate the very purpose of the doctrine. As this Court has stated, the purpose of the continuing wrong doctrine is to avoid the unfairness of requiring a plaintiff to institute an action before he can predict his damages. *See Seidel*, slip op. at 5–6 (citations omitted). In this case, Plaintiff seeks rescission of the investment, which is an amount which Plaintiff could have adequately measured long ago. Therefore, Plaintiff's use of the continuing wrong doctrine in his Section 56(a) claim is rejected. Pursuant to Rule 12(b)(6), the Court will grant Defendants' motion to dismiss this claim as time barred.

### 3. Count VI

■ As to Count VI, Defendants argue for dismissal on two grounds. First, Defendants argue that Plaintiff is reasserting the continuing wrong theory, which the Court rejected in its October 14, 1994 opinion. Second, Defendants argue that Count VI should be dismissed as untimely.

In response, Plaintiff argues that, because the original Complaint did not allege any claim that Defendants' operation of Fund I constituted a fraudulent "course of business" and scheme under Section 17(j) and Rule 17j–1, Defendants' original motion did not test whether such an allegation would state a claim. In addition, Plaintiff argues that Count VI is timely.

In Count VI, Plaintiff avers that the Defendants have employed a "scheme to use the Fund I investors' capital in their own inter-ests" in violation of Section 17(j) and Rule 17j–1(a)(1)–(3). Plaintiff expressly avers the continuing violation theory by stating that the violations have been "ongoing throughout the Class period" and that "All Defendants are primarily liable for the continuing violation of Rule 17j–1(a)(1)–(3)."

As stated above, this Court has already rejected the application of the continuing wrong theory in this case. *See* slip op. at 5 (holding that "the continuing wrong theory is not applicable merely because a defendant engaged in a series of similar acts that all violate the same statute"). This ruling comports with the principles set forth in *Lampf v. Gilbertson*, which this Court applied in *In re ML–Lee Fund II*, when it held that the 1/3 limitations period for Securities Act violations would be applicable to Investment Company Act violations. *See* 848 F.Supp. 527, 552 (D.Del.1994). In *Lampf*, the United States Supreme Court stated that "[b]ecause the purpose of the 3–year limitation is clearly to serve as a cutoff ... tolling principles do not apply to that period." 501 U.S. 350, 363, 111 S.Ct. 2773, 2782, 115 L.Ed.2d 321 (1991). Given the *Lampf* approach, this Court adheres to its earlier rejection of the continuing wrong doctrine to expand the three year limitation period for Plaintiff's Investment Company Act violations. While Plaintiff may continue to allege a violation of Rule 17j–1(a)(1)–(3), the transactions which comprise the alleged "scheme" or "course of conduct" must fall within the three year limitations period. For this reason, Count VI is dismissed pursuant to Rule 12(b)(6), to the extent that it relies upon transactions that predate October 14, 1990, the previously adjudicated limitations date applicable to this case.

### B. *Relation Back of Claims Not Set Forth in Original Complaint*

■ Plaintiff Seidel's SAC alleges ICA violations based on eight separate transactions, occurring before November 3, 1992, which were not asserted in the Original Complaint.[4] Defendants argue that because Plaintiff did

---

**4.** These transactions are as follows: (1) Stanley—transaction executed on April 19, 1991; (2) Alliance II—three transactions occurring on March 31, 1992, June 30, 1992, and September 30, 1992; (3) Petco II—transaction executed on November 19 and 28, 1990; (4) CMI III and IV (partially)—transactions executed on May 15, 1991 and June 15, 1992 and August 15, 1992, respectively.

not assert these claims until he filed the SAC on November 3, 1995, all claims relating to, or arising from these transactions, which occurred more than three years ago, are time-barred. Defendants also argue that relation back principles are inapplicable because the claims do not arise out of the same transactions set forth in the Original Complaint, and therefore, the prior pleading did not give them adequate notice of the conduct, transaction or occurrence that formed the basis for the amended claims.

In response, Plaintiff argues that these eight transactions are further specific examples of Defendants' conduct alleged in the Original Complaint. Thus, because the allegations in the SAC arose out of the conduct set forth in the Original Complaint, relation back principles are applicable, and the claims are not time barred.

In relevant part, Federal Rule of Civil Procedure 15(c) states:

> An amendment of a pleading relates back to the date of the original pleading when ... (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading.

Fed.R.Civ.P. 15(c). The purpose of Rule 15(c) is to prevent the statute of limitations from precluding information pleaded after, but related to the original complaint. *See Procter & Gamble Company v. Nabisco Brands, Inc.*, 125 F.R.D. 405, 413 (D.Del. 1987). In applying this rule, this Court has recognized that the most important factor in determining whether an amended pleading relates back to a prior pleading is whether the prior pleading gave the opposing party adequate notice of the "conduct, transaction or occurrence" out of which the claims or defenses asserted in the amended pleadings arise. *See Hill v. Equitable Bank, Nat'l Ass'n,* 599 F.Supp. 1062, 1071 (D.Del.1984). Generally, courts liberally construe Rule 15(c), particularly where an amendment does not "allege a new cause of action but merely ... make[s] defective allegations more definite and precise." *Siegel v. Converters Transportation, Inc.,* 714 F.2d 213, 215 (2d. Cir.1983).

In construing the Original Complaint in this case, this Court has taken the view that "the Complaint alleges a number of discrete transactions, each of which by themselves constitute a violation of the Investment Company Act." *Seidel,* slip op. at 6. In accord with this approach, this Court rejected the application of the continuing wrong theory and held that a number of transactions alleged were time-barred. Given this approach, the Court must reject Plaintiff's arguments that these new transactions relate back to the Original Complaint. The proposed amendments neither make the previously alleged allegations more specific, nor do they arise out of conduct previously alleged. Because each transaction is a separate potential violation and not a mere attempt to refine broader allegations, and because Plaintiff claims individual injury in each of the transactions as a result of numerous securities laws violations, the Court concludes that the prior Complaint did not give Defendants adequate notice of the additional eight transactions in issue.[5]

---

5. Because the Court has concluded that each transaction is a separate potential violation, the cases that Plaintiff relies on to support his argument for relation back are distinguishable. For example, in *Hill v. Equitable Bank,* 599 F.Supp. 1062, 1071 (D.Del.1984), the court found that the original complaint provided the defendant with sufficient notice to allow relation back of a new cause of action asserting primary liability for fraud, where the original complaint alleged secondary liability under the federal securities laws. As such, the same factual circumstances used to establish the secondary liability claim were used to establish the primary liability claim. However, unlike *Hill,* Plaintiff in this case is not simply raising a new cause of action based on the same factual violations. Rather, Plaintiff is asserting entirely new violations based on discrete, newly alleged facts, of which Defendants had no prior notice.

Plaintiff also relies on *Chesapeake & Ohio Railway Company v. United States Steel Corporation,* 878 F.2d 686 (3d Cir.1989) to support his relation back argument. In *Chesapeake,* the Court of Appeals for the Third Circuit stated:

> Where ... the original pleading placed the defendant on notice that the disputed conduct was of a continuing nature, the defendant is generally expected to defend against all claims arising out of that course of conduct, whether accruing before or after the original pleading was filed.

Furthermore, to adopt Plaintiff's approach would allow Plaintiff to continue to add additional transactions to the Complaint on the grounds that he alleged a continuing course of misconduct. Such a result would be in contravention of the statute of limitations and at odds with this Court's rejection of the application of the continuing wrong doctrine to Plaintiff's allegations. Therefore, the additional eight transactions do not relate back to the transactions alleged in the Original Complaint and are dismissed as time barred.[6]

### C. Whether Plaintiff's State Law Claims are Time–Barred

■ In arguing for the dismissal of Plaintiff's state law claims in Counts VIII, IX and X, Defendants argue that the Court's prior opinion dismissed the state law claims. Defendants rely on the Court's statement that "*any count[s]* of the Complaint related to transactions that occurred prior to October 14, 1990 are barred outright by the 3 year repose period." *Seidel,* slip op. at 5 (emphasis added).

In response, Plaintiff argues that the Court's opinion only applied to the ICA claims. In addition, Plaintiff contends that the result for the state law claims is different than the ICA claims because the state limitations period and tolling doctrines apply to the state claims. Specifically, Plaintiff argues that where the action is "inherently unknowable," the statute is tolled until such time that a "person of ordinary intelligence and prudence would have facts sufficient to put them on inquiry, which, if pursued, would lead to the discovery of the injury." *In re ML–Lee Fund II,* 848 F.Supp. at 554 (citations omitted). Plaintiff further alleges that

Defendants have made no argument to show that the state law claims do not fit within this test.

Under Delaware law, the statute of limitations applicable to the common law claims asserted in this case is three years from the accrual of the cause of action. *See* 10 Del. C. § 8106 (providing that "such claims may be brought within three years *after the claim accrues* "). Generally, the statute of limitations begins to run at the time of the wrongful act, even when a plaintiff is ignorant of the facts. *David B. Lilly Company, Inc. v. Fisher,* 18 F.3d 1112, 1116 (3d Cir.1994); *In re ML–Lee Fund II,* 848 F.Supp. 527, 554 (D.Del.1994). Absent the argument that his state law claims were "inherently unknowable," Plaintiff's state law claims accrued at the time of the alleged wrongful act. *See e.g., Dofflemyer v. W.F. Hall Printing Co.,* 558 F.Supp. 372, 379 (D.Del.1983) (fiduciary duty claim accrues when breach accomplished); *Studiengesellschaft Kohle, mbH v. Hercules, Inc.,* 748 F.Supp. 247, 251 (D.Del. 1990) (contract actions accrue at time of breach). Therefore, the same analysis that barred the pre-October 14, 1990 transactions under the ICA would bar state law claims based upon the same transactions.

However, if the inherently unknowable doctrine applies to the state claims, the statute of limitations would be tolled until such time as a person of ordinary intelligence and prudence would have facts sufficient to put them on inquiry notice of an injury. *Studiengesellschaft Kohle, mbH,* 748 F.Supp. at 252 (quoting *Wilson v. Simon,* 1990 WL 63922 (Del.Super.1990)). Tolling the statute under this doctrine requires two threshold

878 F.2d at 690. In this case, the Court rejected Plaintiff's continuing violation theory. Therefore, the Court cannot now conclude that the very allegations that the Court dismissed provided Defendants with adequate notice that they would be charged with additional ICA violations. To hold otherwise would resurrect the theory which this Court has previously rejected.

**6.** Plaintiffs advance the additional argument that Defendants should have had notice of these eight claims because of the discovery Plaintiff sought and defendants vigorously opposed. Defendants contend that the exercise of their right to defend against excessive discovery should not translate

into "adequate notice" of unalleged transactions. The Court agrees with Defendants. In *Azarbal v. Medical Ctr. of Del., Inc.,* the court held that plaintiff's answers to the defendant doctor's interrogatories provided specific notice of plaintiff's claim of lack of informed consent. 724 F.Supp. 279, 282 (D.Del.1989). Here, Plaintiff does not point out any specific documents which would have given Defendants adequate notice. Rather, Plaintiff relies on the mere fact that discovery was extensive and time-consuming. The Court concludes that absent the specific notice required by *Azarbal,* the extent and time of discovery is insufficient to establish adequate notice for relation back.

factual findings. First, there must be no observable or objective factors which would put a party on notice of an injury. *Studiengesellschaft Kohle, mbH,* 748 F.Supp. at 251. Second, the party seeking to toll the statute must show that he was blamelessly ignorant of the act or omission and the injury. *Id.*

In the SAC, Plaintiff alleges that Defendants' scheme was inherently unknowable until April 9, 1993, for two reasons. First, Plaintiff claims that Defendants prevented him from learning of the scheme by objecting to certain discovery requests. (SAC ¶ 154). Second, Plaintiff claims that he was "entitled to rely on the accuracy of reports mailed to them and filed with the SEC by Defendants as their fiduciaries." (SAC ¶ 154). In response, Defendants argue that Plaintiff's allegations were not inherently unknowable because they are based upon such "observable or objective factors" as publicly filed annual and quarterly reports, proxy statements, and SEC filings.

Under Delaware law, discovery delays and disputes are insufficient grounds to toll the statute of limitations. *Mergenthaler v. Asbestos Corporation of America,* 500 A.2d 1357, 1361 (Del.Super.Ct.1985). Therefore, the Court must reject Plaintiff's first argument, that Defendants alleged discovery objections prevented him from learning about his claims.

Regarding Plaintiff's second argument, that his claims were inherently unknowable because he was entitled to rely on his fiduciaries, Plaintiff correctly points out that beneficiaries are entitled to trust their fiduciaries. *See e.g., Borden v. Sinskey,* 530 F.2d 478, 489 n. 10 (3d Cir.1976) ("Shareholders have no duty to search corporations records for evidence of misconduct on the part of corporate officers and directors. Rather, they are entitled to assume that those standing in a fiduciary relationship to them will be faithful to their charge."). However, beneficiaries should not put on blinders to such obvious signals as publicly filed documents, annual and quarterly reports, proxy statements, and SEC filings. Here, the Court concludes that the public documents, which form the basis of many of Plaintiff's claims, could have pro-

vided Plaintiff with adequate notice of any alleged misconduct by Defendants. Therefore, the Court concludes that the doctrine of inherent unknowability is not applicable, and Plaintiff's common law claims based on pre-October 14, 1990 transactions are time-barred.

To the extent that the state law claims are based upon transactions which are not time-barred, the Court will exercise its discretion to adjudicate these pendant state claims based upon supplemental jurisdiction. As in *In re ML–Lee Fund II,* the Court finds that this decision will advance the principles of comity, judicial economy, convenience and fairness to the litigants. 848 F.Supp. at 554 n. 21.

**D. *Whether the SAC States a Claim for Breach of Contract***

■ Regarding the contract claim alleged in Count VIII of the SAC, Defendants argue that the claim is predicated upon Defendants' "agreement" to adhere to the federal securities laws. Defendants argue that such an "agreement" was a pre-existing duty, and a pre-existing duty cannot provide the necessary consideration to establish an enforceable contract.

It is a well-settled principle that an enforceable contract cannot be based upon a duty which one is already legally obligated to perform. *See* Restatement (Second) of Contracts §§ 73, 80(2) (1979); Calamari and Perillo, *The Law of Contracts* § 49(b) (West 1987) ("The pre-existing duty rule applies not only to a modification of an existing contract but to a duty that is not contractual in nature—that is to say a duty imposed by law.") A promise to comply with the federal securities laws is such a pre-existing duty. *Accord Adell Broadcasting Corp. v. Cablevision Indus.,* 854 F.Supp. 1280, 1292 n. 9 (E.D.Mich. 1994) (concluding that letter stating that Cablevision company will comply with FCC rules "is not a legally enforceable promise in contract law."); *Pressman v. United States,* 33 Fed.Cl. 438, 444 (Cl.Ct.1995), *aff'd,* 78 F.3d 604 (Fed.Cir.1996) ("[A] promise by a government employee to comply with the law does not transform statutory or regulatory obligations to contractual ones. The viola-

tion of the statute or regulation will not be enforceable through a contract remedy."). Therefore, the Court dismisses this Count to the extent that Plaintiff's contract claim is premised upon the alleged securities violations. However, Plaintiff may pursue this claim to the extent that it is based upon a breach of other obligations.

### E. Whether the SAC Properly Alleges a Claim for Relief

■ Defendants argue that Plaintiff's claims premised on the BeefAmerica IV, Alliance II and Holdingflower transactions should be dismissed for failure to specify any injury or damages resulting from them.

As the Court stated in *CNW Corporation v. Japonica*, where the complaint alleges that a defendant's violations caused him damages, the plaintiff need not specify the dollar amount of those damages. 776 F.Supp. 864, 869 (D.Del.1990). Therefore, Plaintiff's allegations of damages in an "unknown amount" are not deficient, provided that enough facts have been alleged to show that the violations caused some sort of damages. While Plaintiff will be put to his test to prove damages at trial, this Court cannot say that the Complaint, read as a whole, fails to allege sufficient facts to establish that the alleged violations caused injury to the Plaintiff. *See Tanzer v. Huffines*, 314 F.Supp. 189, 195 (D.Del.1970). Therefore, Defendants' Motion to Strike or Dismiss based on a failure to adequately plead damages will be denied.

### F. Whether the SAC Is Procedurally Infirm

As Defendants acknowledge, this Court has already addressed Defendants' arguments that the SAC should be dismissed because (1) Plaintiff's claims are derivative and not individual in nature, and (2) no private rights of action exist under the provisions of the ICA under which Plaintiff asserts his claim. As in the October 14, 1994 opinion, the Court incorporates the analysis and conclusions contained in *In re ML–Lee Fund II* with regard to these issues and denies Defendants' Motion to Strike or Dismiss to the extent that it reiterates these previously decided grounds. 848 F.Supp. 527 (D.Del.1994).

## III. Merrill Lynch and IGP Defendants' Motion to Dismiss

### A. Whether the SAC States a Claim under Section 36(a) of the ICA

■ The Merrill Lynch and IGP Defendants argue that the SAC fails to allege a Section 36(a) violation against them. In raising the Section 36(a) violation, the Complaint avers that "All Defendants violated § 36(a) of the 1940 Act in *recommending* or *approving* the unlawful transaction." The Merrill Lynch and IGP Defendants raise two arguments based on this language. First, the Merrill Lynch and IGP Defendants argue that "recommending or approving" is the equivalent of "aiding and abetting," and this Court has previously ruled that there is no liability under Section 36(a) for aiding and abetting. *See In re ML Lee Fund II*, 848 F.Supp. at 545. Second, the Merrill Lynch and IGP Defendants argue that the "personal misconduct" requirement of Section 36(a) only permits liability in cases involving self-dealing, conflict of interest or some personal gain to the defendant. Thus, Defendants argue that the Complaint fails to allege that the Merrill Lynch and IGP Defendants engaged in this type of misconduct.

In response, Plaintiff argues that his Section 36(a) claim is not based on aiding and abetting liability. Rather, it is based upon the ML and IGP Defendants' failure to perform the fiduciary duties that they independently owed to Fund I investors.

The Court agrees with Plaintiff that the Complaint adequately alleges a failure of the ML and IGP Defendants to fulfil the fiduciary duties they owed to Fund I investors. Reading the Complaint as a whole, the Court cannot say that the allegations against ML and IGP pertain to aiding and abetting. Rather, the Complaint alleges several failures by the ML and IGP Defendants which would amount to a breach of their fiduciary duties, culminating in their approval and recommendation of prohibited transactions. For example, the Complaint alleges, among other things, that the IGPs "failed to adopt

or implement procedures necessary to determine whether a transaction was prohibited." Recommending or approving a transaction without determining if it is a proper transaction would clearly be a breach of the ML and IGP's fiduciary duties and not merely an act of aiding or abetting.

Second, while many cases under Section 36(a) have involved self-dealing, conflict of interest, or some personal gain to the defendants, the Court is hesitant, at this stage of the proceeding, to limit the term "personal misconduct" to only those three types of misconduct. As the Supreme Court recognized in *Burks v. Lasker*, the ICA "assigns a host of special responsibilities involving supervision of management and financial auditing" to independent directors. 441 U.S. 471, 483, 99 S.Ct. 1831, 1840, 60 L.Ed.2d 404 (1979). As such, these directors serve as "watchdogs" whose primary function is to " 'supply an independent check on management and to provide a means for the representation of shareholder interests in investment company affairs.' " *Id.* at 484, 99 S.Ct. at 1840 (quoting S.Rep. No. 91–184, pp. 32–33 (1969)). Therefore, as directors the ML and IGP Defendants' alleged failures would amount to a direct breach of their fiduciary duties, which is a form of personal misconduct.

B. *Whether the IGP and ML Defendants Are Vicariously Liable as General Partners of a Limited Partnership for Violations of Section 17(j), Rule 17j–1 and Section 37 of the ICA*

■ Initially, ML and IGP argued for dismissal of the 17(j) claim for three reasons. First, ML and IGP argue the claim should be dismissed because they did not purchase or sell any security from or to Fund I. Second, they argue that the instances of misconduct alleged in the SAC relate to alleged misconduct by the Lee Defendants. Lastly, they contend that Plaintiff failed to plead the fraud with the requisite particularity in Rule 9(b).

In response, Plaintiff does not address these alleged deficiencies, but rather advances the theory that ML and IGP are vicariously liable as general partners of a limited partnership. ML and IGP argue that the wording of the statute does not permit vicarious and partnership types of liability.

The Supreme Court has refused to extend liability or impose duties absent a clear congressional intent to do so. *See Central Bank of Denver, N.A. v. First Interstate Bank of Denver*, N.A., 511 U.S. 164, 174–78, 114 S.Ct. 1439, 1447–48, 128 L.Ed.2d 119 (1994) (refusing to extend Section 10(b) of Securities Exchange Act to aiding and abetting liability based on the absence of clear statutory language); *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 200–01, 96 S.Ct. 1375, 1384–85, 47 L.Ed.2d 668 (1976) (refusing to extend Section 10(b) liability to cover "negligent nonfeasance" in the absence of clear legislative intent). Therefore, the Court will not read this type of liability into the statute. *Accord In re ML–Lee Fund II*, 848 F.Supp. at 547 (rejecting aiding and abetting liability and stating, "[H]ad Congress intended to expand the scope of liability under private rights of action to include aiders and abettors, Congress would have done so explicitly.").[7]

Furthermore, regarding Section 37 liability, IGP and ML argue that vicarious liability is inconsistent with that section's requirement that defendants act "willfully." Therefore, ML and IGP contend that Plaintiff's argument that partnership liability "attaches regardless of whether all of the general part-

---

7. The Court's decision not to extend § 17(j) and § 37 liability to encompass vicarious liability is not inconsistent with the Court's decision not to limit § 36(a) liability to self-dealing, conflict of interest or personal gain. The limitations on § 36(a) are judicial glosses on the term "personal misconduct." Personal misconduct is not clearly defined in the statute, and, at this stage, the Court believes Plaintiff should have an opportunity to develop his § 36(a) claim.

To add vicarious liability, however, is different than allowing Plaintiff the opportunity to explore different factual scenarios to establish and define "personal misconduct." Adding vicarious liability would be adding an entirely different theory of liability, and not merely attempting to define a term previously used in the statute. As with aider and abettor liability, the ICA is silent with respect to vicarious liability. Therefore, had Congress intended to introduce this distinct form of liability under the ICA, it would have stated so expressly.

ners had knowledge of the violations" ignores the "willfully" requirement, which is expressly mandated by the plain language of the statute. Therefore, the Court will dismiss Plaintiff's Section 17(j) and Section 37 claims.

### CONCLUSION

For the reasons discussed, Defendants' Motion To Strike Or Dismiss The Second Amended Class Action Complaint (D.I. 77, 78) will be granted in part and denied in part. In addition, the Merrill Lynch and IGP Defendants' Motion To Dismiss The Second Amended Class Action Complaint (D.I. 74) will be granted in part and denied in part. Plaintiff's Motion To File A Sur–Reply In Opposition To Defendants' Motion To Strike And Second Motion To Dismiss (D.I. 94) will be denied as moot.

An appropriate Order will be entered.