**Orrin T. SKRETVEDT, Plaintiff,**

v.

**E.I. DUPONT DE NEMOURS AND COMPANY, a Delaware corporation; E.I. Dupont De Nemours and Company, Plan Administrator; Pension and Retirement Plan; Hospital and Medical–Surgical Plan; Dental Assistance Plan; Non Contributory Group Life Insurance Plan; Contributory Group Life Insurance Plan; Total and Permanent Disability Income Plan; Savings and Investment Plan; Tax Reform Act Stock Ownership Plan; and Short Term Disability Plan Defendants.**

**No. CIV. A. 98–61–MPT.**

United States District Court,
D. Delaware.

Sept. 6, 2000.

446

John M. Stull, Wilmington, DE, for plaintiff.

Gretchen Ann Bender, Morris, James, Hitchens & Williams LLP, Wilmington, DE, Evelyn H. Brantley, E.I. duPont de Nemours & Co., Wilmington, DE, for defendant.

## OPINION

THYNGE, United States Magistrate Judge.

Plaintiff, Orrin T. Skretvedt brought this claim pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, in an attempt to recover long term disability benefits allegedly due him under defendants' disability plans. Before this court are plaintiff's motion to amend complaint and cross-motions for summary judgment. For the reasons expressed below, plaintiff's motion to amend and plaintiff's motion for summary judgment are DENIED, and defendants', E.I. duPont de Nemours and Company ("DuPont"); E.I. duPont de Nemours and Company, Plan Administrator, Pension and Retirement Plan; Hospital and Medical–Surgical Plan; Dental Assistance Plan; Noncontributory Group Life Insurance Plan; Contributory Group Life Insurance Plan; Total and Permanent Disability Income Plan; Savings and Investment Plan; Tax Reform Act Stock Ownership Plan; and Short Term Disability Plan, motion for summary judgment is GRANTED.

## I. Facts

### a. Background

Orrin Skretvedt was employed as a Senior Research Environmental Engineer with DuPont at its Richmond Spruance Plant site, from June 28, 1974 until his termination on February 7, 1995.

In November 1994, plaintiff began receiving treatment from Dr. Harold Binhammer for job related anxiety and stress. This period of treatment also marked a three month absence from work for plaintiff.[1] During this period, plaintiff also saw Dr. James Layton, Medical Supervisor at the DuPont Spruance Plant, who treated plaintiff with Paxil and referred him to Dr. Graenum Schiff. Dr. Schiff, in turn, referred plaintiff to Dr. Theresa Buczek, a clinical psychologist, specializing in stress related job disorders.

In December 1994, Dr. Layton sent "Physician's Report 'B' " forms to Drs. Buczek, Binhammer and Schiff for their contributions to a medical report being prepared by DuPont to determine whether plaintiff's condition was temporary or permanent, and thus, whether plaintiff would qualify for permanent medical disability benefits.

On February 7, 1995, plaintiff was terminated from DuPont charged with having committed an act of serious misconduct.[2] On February 10, 1995, plaintiff filed a claim with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination based upon disability pursuant to the Americans with Disabilities Act ("ADA"). On June 25, 1995, the EEOC determined that it was unable to find a violation of the ADA based upon the information submitted. As plaintiff had exhausted his administrative remedies, the EEOC granted plaintiff the right to sue.

In September 1995, plaintiff contacted an attorney regarding obtaining disability benefits from DuPont. On September 29, a "Settlement Agreement and Release of All Claims" was entered into between plaintiff and defendants. The agreement allowed plaintiff to apply for disability benefits with DuPont, and DuPont assured that plaintiff's application and medical information would be received and reviewed in a neutral manner.[3]

Following a review of plaintiff's medical information,[4] the DuPont Board of Benefits and Pensions ("Board"), the body responsible for the review and determination

1. Plaintiff asserts that he was taking a "leave without pay" during his absence. (D.I. 104 at A–743.) He further asserts that his absence was taken at the behest of his treating physician due to his condition. (D.I.1.) DuPont alleges that in early November 1994, it discovered that plaintiff had "misappropriated" a company fax machine and subsequently placed plaintiff on "leave with pay," while investigating the matter and considering termination. (D.I.101.)

2. This "act of serious misconduct" was related to the taking and use of the fax machine without company permission. Apparently, plaintiff had been notified on several occasions that he could either resign outright or resign with early retirement, the latter of which would allow him to apply for an incapability pension. Termination does not allow for this option. (D.I. 102 at A–141.)

3. In pertinent part, the settlement agreement read,
 3. Skretvedt acknowledges that this Agreement does not represent a guarantee that he will receive benefits under the above-referenced plans, but only that he will be able to apply for the same. Skretvedt also acknowledges that his entitlement to either benefit is dependent upon his medical condition at the time of his termination of employment and in accordance with the terms and conditions of those plans. (D.I. 102 at A–151.)

4. The medical information reviewed by the Board of Benefits and Pensions consisted of the following:
 1.) Psychiatric Evaluation from Dr. Graenum Schiff dated 11/16/94;
 2.) Letter from Dr. Theresa Buczek to Dr. James E. Layton dated 1/16/95;
 3.) Letters from Dr. Graenum Schiff dated 1/17/95 and 1/23/95;
 4.) Letter from Dr. Harold Binhammer dated 1/26/95;
 5.) Medical Evaluation Report of Dr. James Layton dated 10/6/95.
 (D.I. 102 at A–237.)

of disability claims for DuPont employees,[5] determined that plaintiff was not "permanently incapable of performing the duties of his job with the degree of efficiency required by the Company, at the time of his termination." [6] (D.I. 102 at A–237) Thus, plaintiff's application for an Incapability Pension and benefits pursuant to DuPont's Total and Permanent Disability Income Plan was denied on May 23, 1996.

On June 28, 1996, plaintiff sent a written appeal to Claude Edmonds, the Board's designated contact for submission of appeals. Plaintiff's appeal letter sought "clarification" on the types of objective medical evidence ("OME") [7] he needed to perfect his appeal.[8] Despite subsequent letters to DuPont, plaintiff did not receive additional clarification, and thereafter formally submitted his appeal to the Board on May 16, 1997. On September 19, approximately 120 days after filing his appeal, plaintiff sent a letter to DuPont inquiring as to the status of his appeal. He received no immediate response to his inquiry. In early February 1998, plaintiff contacted a lawyer and began the process for litigating the instant matter.

On February 4, 1998, plaintiff filed a complaint against DuPont alleging an arbitrary and capricious denial of benefits and bad faith and conflict of interest in the evaluation of his application for benefits and in his termination. On June 23, DuPont, after having considered the issues raised in plaintiff's lawsuit, agreed to consider plaintiff's appeal for disability benefits. On August 31, pursuant to a stipulation between the parties, Judge Sue Robinson ordered a stay of the instant proceedings and ordered that only the appeal or "final decision" of the Board would be subject to judicial review. Finally, on October 13, 1998, the DuPont Board of Benefits and Pensions denied Skretvedt's final appeal for disability benefits.

### b. The Pension & Disability Benefit Plans

DuPont offers two types of long term disability benefits for its employees: (1) an "Incapability" Pension; and (2) "Total and Permanent" Disability Income Plan. The

5. The application process for DuPont's disability benefits is as follows: (1) the employee submits an application with medical information to the site benefits administrator, which is subsequently forwarded to a .Benefits Consultant; (2) the Benefits Consultant prepares an application "package" and forwards it to a DuPont physician for a "medical review recommendation"; (3) if the DuPont physician recommends a denial of the application to the Board, and the application is subsequently denied, the Benefits Consultant sends a written decision to the applicant which advises of the decision and the right to appeal; (4) if the employee-applicant chooses to appeal, additional medical documentation is invited; (5) the appeal with documentation is then forwarded to the three member Board of Benefits and Pensions for review and decision (by vote); (6) the Board will deny an appeal if the "objective medical evidence" fails to sufficiently show that the applicant meets the disability standards of the applicable plan; (7) the Board then issues a written decision, and thereafter, the employee-applicant has a right to sue. (D.I. 101 at 4–5.)

6. Three requirements must be met to receive an award of benefits: (1) the applicant must present evidence that he was *permanently* (as opposed to temporarily) disabled; (2) *at the time of the termination;* and (3) the *severity* of the disability at termination *permanently* precluded the applicant from performing the duties of his position. (D.I. 101 at 18.)

7. DuPont's Total and Permanent Disability Plan ("T & P") in its section on "Application For Benefits" .does not describe the evidentiary requirements of an application in terms of "objective medical evidence." Rather, the T & P Plan requires that *"satisfactory* medical evidence" be provided upon which the Board may base a finding of disability. (D.I. 102 at A–7 (emphasis added).)

8. Although plaintiff argues that no example of objective medical evidence was ever provided him, in its May 23, 1996 letter of denial, the Board noted that, "[e]xamples of objective medical evidence are significant or positive results of tests such as MRI, x-ray reports and complete medical evaluations. Opinions of healthcare providers are not sufficient without objective medical evidence to support such opinions." (D.I. 98 at A–30.)

incapability benefits are part of the Du-Pont "Pension and Retirement Plan" ("P & I Plan"). The incapability portion of the P & I Plan provides benefits to employees who have 15 years of continuous employment with the company, and who have become "incapable" of performing their jobs with the "degree of efficiency" required by DuPont.

"Total and Permanent" disability benefits come from DuPont's Total and Permanent Disability Plan ("T & P Plan") which requires that an employee be totally and permanently incapable of working; that is, one "totally disabled by injury or disease and presumably will be totally and permanently prevented from doing any work." (D.I. 102 at A–82.)

Therefore, in order to receive any long term disability benefits, claimants must show that they are incapable of working at their position at DuPont (P & I Plan) or in any position (T & P Plan), and that the incapability was present at the time of termination. (D.I. 101 at 3.) In addition, there are two stages to any long term benefits eligibility determination. Initially, DuPont decides whether an employee is eligible for incapability benefits, characterized by DuPont as the "lower disability standard." Then, if this threshold is met, the Board will determine the employee's eligibility for total and permanent disability benefits. (D.I. 101 at 4.)

## II. Law

### a. Jurisdiction

Jurisdiction over this matter is exercised pursuant to 29 U.S.C. § 1132(e)(1), and 28 U.S.C. § 1331.

### b. Summary Judgment Standard

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The movant bears the burden of demonstrating that there are no genuine issues of material fact, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 n. 10, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), and "[f]acts that could alter the outcome are 'material' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Federal Kemper Life Assurance Co.,* 57 F.3d 300, 302 n. 1 (3d Cir. 1995) (citations omitted). Thus, on any motion for summary judgment, the court must view the evidence in a light most favorable to the nonmovant, and draw all reasonable inferences in his favor. *Wetzel v. Tucker,* 139 F.3d 380, 383 n. 2 (3d Cir.1998).

If an adequately supported motion for summary judgment has been made, "the adverse party 'must [have] set forth specific facts showing that there is a genuine issue for trial,'" *Anderson v. Liberty Lobby,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), thus, compelling the nonmovant to "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* at 586 (citation omitted). Thereafter, if the nonmovant cannot satisfy his burden, the movant is entitled to summary judgment. *Celotex v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## III. Discussion

### a. Standard of Review Under ERISA

In the seminal case of *Firestone Tire & Rubber Co. v. Bruch,* the Supreme Court recognized *de novo* review as the standard for evaluating the propriety of a benefit determination under ERISA, unless a "benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," in which case the administrative decision will be evaluated based on whether it was an "arbitrary

and capricious" determination. 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Thus, where discretionary authority is given, "the administrator's interpretation of the plan 'will not be disturbed if reasonable.'" *Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 437 (3d Cir.1997) (*citing Firestone*, 489 U.S. at 115, 109 S.Ct. 948).

However, the *Firestone* Court also noted that, "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'" *Firestone*, at 115, 109 S.Ct. 948 (citation omitted). The Third Circuit Court of Appeals generally views situations where an employer neither incurs a direct expense as a result of the allowance of benefits, nor obtains a direct benefit from the discontinuation thereof, to be without conflict. *Mitchell*, at 437; *Abnathya v. Hoffmann–La Roche, Inc.*, 2 F.3d 40, 45 n. 5 (3d Cir.1993). The court has recently elaborated on this proposition finding that the "structural incentives" to deny claims are often outweighed by the incentives to grant them, such as "the loss of morale and higher wage demands that could result from denials of benefits," thus, precluding the likelihood of conflict. *Pinto v. Reliance Standard Life Ins. Co.*, 214 F.3d 377, 378 (3d Cir.2000) (*citing Nazay v. Miller*, 949 F.2d 1323 1335 (3d Cir. 1991)).

**b. DuPont's Denial of Skretvedt's Application for Benefits**

In Counts I through VIII, plaintiff alleges that the DuPont Board of Benefits and Pensions "arbitrarily and capriciously" denied him benefits in violation of ERISA § 502.[9] Plaintiff asserts these claims against the Board's initial review and denial of plaintiff's application for benefits. For reasons noted, *infra*, the court will not review such claims as they apply to the Board's initial review and decision. However, pursuant to Rule 15, the court will substitute the Board's final review and decision for those claims alleged in Counts I through VIII.[10]

**1. Initial Review and Denial**

■ On August 31, 2000, the parties entered into a stipulation which precluded judicial review on all issues regarding the initial review. Rather, only those issues related to the Board's final review and decision concerning plaintiff's application for disability benefits remained. In pertinent part the stipulation read,

4. If the determination of the Board of Benefits and Pensions pursuant to Exhibit A is adverse to Plaintiff, the matter will proceed on the basis that Plaintiff has exhausted his administrative remedies. The determination pursuant to Exhibit A will be the final decision of the Board of Benefits and Pensions and *will be the only decision for purpose of judicial review* of the denial of benefits.

(D.I. 36 (emphasis added).)[11] Judge Robinson's order and the aforementioned stipulation preclude a review of the Board's initial benefits determination, and therefore, all claims regarding the initial disability determination are waived. Thus, the court will not consider plaintiff's claims to the extent they address DuPont's initial review.

**2. Final Review and Denial**

On October 13, 1998, the Board reviewed all medical information submitted by plaintiff pursuant to his appeal, and issued a final decision thereon.[12] Consis-

9. 29 U.S.C. § 1132(a)(1)(B)

10. Fed.R.Civ.P. 15.

11. Exhibit A, which was attached to the August 31, 1998 stipulation, was a June 23, 1998 letter from Herbert W. Watson, Operations Manager, Pension and Long Term Disability

for DuPont which indicated that in light of the issues raised in plaintiff's complaint, (D.I.1), the Board would consider an appeal of its earlier decision. (D.I.36, Ex. A)

12. The medical information submitted included the following:

tent with its earlier finding, the Board again denied plaintiff's application for long term disability benefits.

The Board determined that Skretvedt was not "permanently incapable" of performing the duties of his job with the "degree of efficiency" required by DuPont. (D.I. 103 at A–555.) Specifically, while the medical information suggested "symptoms of depression and anxiety," this diagnosis was insufficient to support a determination that Skretvedt was "permanently incapable" of performing the duties of an Environmental Engineer with the degree of efficiency required by DuPont. Id.

 As noted herein, under ERISA, a court reviews the determination of a plan administrator on an "arbitrary and capricious" standard provided the plan allows the administrator discretion to determine eligibility. Under DuPont's plans, this discretion is given to the Board of Benefits and Pensions.[13] Plaintiff argues, however, and the court acknowledges that a heightened and less deferential standard of review may be appropriate under circumstances where an administrator funds the benefit plan it administers. This proposed heightened standard, borne out of the *Firestone* opinion, was further elaborated upon by the Third Circuit in *Pinto v. Reliance Standard Life Ins. Co.*, 214 F.3d 377 (3d Cir.2000).

Under *Pinto*, the court found a conflict warranting a heightened standard where an insurance company both funded and administered a benefit plan. In pertinent part, the Third Circuit held that where administration and funding of a plan emanates from an insurance company, unlike with the typical employer, a conflict results because "the fund from which the monies are paid is the same fund from which the insurance company reaps its profits," whereas, an employer cannot generally recoup benefits from the "actuarially determined benefit funds typically maintained by [it] ...." *Pinto*, 214 F.3d at 378–79.

Upon review of DuPont's benefits plans, clearly their design and implementation are reminiscent of those plans "typically maintained by employers," and as such, are far less likely to be subject to the conflict presented in *Pinto*, where profits become a consideration in a benefits determination.[14] Thus, this court finds that the

1. Psychiatric Evaluation from Graenum R. Schiff, M.D. dated 11/16/1994;
2. Letter form Teresa A. Buczek, Ph.D. to James E. Layton, M.D. dated 1/16/1995;
3. Letters form Graenum R. Schiff, M.D. to James E. Layton, M.D. dated 1/17/1995 and 1/23/1995;
4. Letter from Harold Binhammer, M.D. to James E. Layton, M.D. dated 1/26/1995;
5. Medical Evaluation Report of James E. Layton, M.D. dated 10/6/1995;
6. Psychological Evaluation Report of Richard B. Zonderman, Ph.D. dated 3/7/1997 and 3/13/1997;
7. Letter from Richard B. Zonderman, Ph.D. to John M. Stull, Esquire dated 7/29/1998;
8. Letter from Harold Binhammer, M.D. dated 5/9/97;
9. Letter from Graenum R. Schiff, M.D. to John M. Stull, dated 7/28/1998;
10. Letter from Graenum R. Schiff, M.D. to DuPont Board of Pensions and Benefits dated 5/9/1997;
11. Social Security Administration's Explanation of Determination;

12. Letters from Orrin T. Skretvedt to Claude Edmonds and the DuPont Board of Pensions dated 5/16/1997.

13. Indeed, plaintiff conceded as much during oral argument, noting that "[i]t's clear from the plan language that discretion has been stated in the plan language and that's where we start." (D.I. 117 at 36.)

14. Additionally, the court noted that, situations where an employer "fund[s] a plan and pay[s] an independent third party to interpret the plan and make plan benefit determinations," and circumstances where an employer "establish[es] a plan, ensure[s] its liquidity, and create[s] an internal benefits committee vested with the discretion to interpret the plan terms and administer benefits," are distinctly different from a situation where an insurance company funds and administers a plan itself. *Pinto*, 214 F.3d at 383. The court further noted that the former situations "do not, in themselves, typically constitute the kind of conflict of interest mentioned in *Firestone*." *Id.*

"arbitrary and capricious" standard is the proper standard of review in the instant matter, and as such, will give the appropriate level of deference to the Board's final decision.

## A. Review Under the "Arbitrary and Capricious" Standard

■ The court has reviewed the medical information presented in support of plaintiff's application [15] and the record [16] of the Board in consideration of plaintiff's appeal. While the record is not extensively developed, the record, as it is, minimally satisfies the requirements of ERISA § 503 [17] and DuPont's own Pension and Disability Plans,[18] and does not otherwise demonstrate arbitrary and capricious action by the Board.

In its denial letter, the Board indicated that it found that plaintiff was not permanently incapable of performing the duties of his job, as an Environmental Engineer, with the degree of efficiency required by DuPont, as of the time of plaintiff's termination. The Board cited Section IV C(1) [19] in support of this finding. The Board further noted that while plaintiff experienced symptoms of depression and anxiety, those symptoms were insufficient to

satisfy the requirements of Section IV. (D.I. 103 at A–555.)

Similarly, the court's review does not result in a disparate conclusion. The court does not perceive the Board's determination to be arbitrary and capricious. In fact, the court notes that the Board and its delegates, not once, but twice, considered the medical information submitted by plaintiff, evaluated that information in light of the requirements set forth in Section IV of the Disability Plan documents, and reached the same conclusion on both occasions.[20]

Additionally, as the court is required to grant more than a modicum of deference to the Board's determination, the prerogative does not exist to justify further dissection of the Board's application of the medical information to the terms of eligibility in its own plan documents. Rather, the Board adequately fulfilled its procedural obligations in reaching its conclusion, and did so in a manner neither arbitrary nor capricious to plaintiff or his application.

Regarding the medical information presented by plaintiff, said information was inconclusive as to whether plaintiff was capable of performing his job with the degree of efficiency required by DuPont, and thus, insufficient to demonstrate plain-

---

**15.** *See* note 12.

**16.** For all intents and purposes, the record of the Board on review is limited to the minutes of the Board's meeting on October 13, 1998, (D.I. 103 at A–554.), and contents of its letter denying plaintiff's application of November 16, 1998. (D.I. 103 at A–555.)

**17.** ERISA § 503 requires "adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied . . .," 29 U.S.C. § 1133.

**18.** The Administrative Information Section of DuPont's Disability Plan requires that "[i]n the case of a continued denial, you'll be given the *specific reasons* and the *plan provisions* on which the denial is based." (D.I. 102 at A–90 (emphasis added).)

**19.** In pertinent part, Section IV C(1) of the Pension and Retirement Plan reads:

C. Incapability Retirement
(1) Eligibility
An employee may be retired by the Company if the Board of Benefits and Pensions finds that he has become, for any reason, permanently incapable of performing the duties of his position with the degree of efficiency required by the Company, and he has at least 15 years of service. (D.I. 102 at A–42.)

**20.** In its letter of May 3, 1996, the Board recognized that Skretvedt manifested "Adjustment Disorder with Mixed Emotional Features, i.e., anxiety and depression." Therein, the Board found that "the medical evidence submitted does not support a conclusion that [he was] permanently incapable of performing the duties of a Environmental Engineer with the degree of efficiency required by the Company." (D.I. 102 at A–244.)

tiff's permanent incapability.[21] The court finds it reasonable, therefore, for the Board to have concluded that, at the time of his termination, plaintiff was not incapable of performing his duties, nor totally and permanently disabled.[22] The court also finds the substantive determination of the Board regarding the medical information presented by plaintiff as applied to the criteria in Section IV(C)(1) of the plan to be appropriate, and neither arbitrary nor capricious under ERISA § 502.

Therefore, regarding plaintiff's claims of arbitrary and capricious action by the Board upon its final review of plaintiff's application for benefits as alleged in Counts I through VIII, the court finds that there is no genuine issue of material fact upon which plaintiff could be successful and as such, plaintiff's motion for summary judgment is denied. Since a genuine issue does not exist as to the propriety of the Board's action on appeal, defendants' motion for summary judgment is granted.

### B. ERISA § 503

█ In Count I, plaintiff alleged that defendants failed to inform him of the exact reasons for the denial of benefits under the Incapability Pension (as a part of the "P & I Plan"), and as such violated the requirements of ERISA § 503. ERISA § 503 in pertinent part states:

In accordance with regulations of the Secretary, every employee benefit plan shall—

(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant ....

29 U.S.C. § 1133. The Code of Federal Regulations similarly elaborates on a benefit administrator's responsibility. As Section 2560.503–1(h) *Decision on review* indicates: "(3) The decision on review shall be in writing and shall include specific reasons for the decision, written in a manner calculated to be understood in by the claimant, as well as specific references to the pertinent plan provisions on which the decision is based." 29 C.F.R. § 2560.503–1(h)(3).

As noted, *supra*, DuPont's benefit plans brochure contains similar language of notice. Essentially, all of the preceding regulations amount to a basic requirement of notice of the decision and an explanation to the beneficiary/claimant as to why the application (or claim) was denied on appeal.

This court earlier indicated that DuPont satisfied, albeit minimally, these requirements on appeal, through its letter to

---

**21.** For example on November 16, 1994, Dr. Schiff diagnosed plaintiff as having "[a]djustment disorder with anxious mood," and "severe work stress." The prescribed treatment plan was 20mgs. of Paxil. (D.I. 102, at A–212.) On November 11, 1994, Dr. Schiff found that plaintiff was "much improved on Paxil." Id. Then on January 17, 1995, Dr. Schiff opined that plaintiff was "no longer temperamentally suited to do the job he was doing at his previous level of efficiency at DuPont." (D.I. 102 at A–214.) Dr. Theresa Buczek similarly found "the pertinent diagnosis, as I see it, is Adjustment Disorder with Mixed Emotional Features." However, as to plaintiff's condition, Dr. Buczek noted that, "[i]n regard to the question of whether these impairments are temporary or expected to be permanent, I am still unclear .... I recommend that he be reevaluated in 90 days to see what if any job activity he may resume at DuPont." (D.I. 102

at A–213.) Similarly, Dr. Harold Binhammer noted regarding plaintiff's condition, "[a]t this time while not clearly definable as to the length of time, I suspect it may be permanent." (D.I. 102 at A–215.) Additionally, Dr. Buczek evaluated plaintiff's condition as "a mixture here of a man with some perfectionism and feeling 'driven to get the job done' in the context of increasing responsibility and ambiguity where the job couldn't get done. The resulting symptomatology included poor judgment and overwhelming anxiety." (D.I. 102 at A–217.) Dr. Schiff concurred on January 26, 1995. Id.

**22.** Plaintiff agreed that for the Board to have evaluated his medical condition based upon the medical information present at the time of his termination was a "fair standard." (D.I. 117 at 39.)

plaintiff of November 16, 1998. Once again, the Board delineated that, after review of the medical evidence, plaintiff's application was denied because it "determined that [plaintiff was] not permanently incapable of performing the duties of [his] job with the degree of efficiency required by the Company, at the time of [his] termination." (D.I. 103, at A–555.) The letter then specifically cited Section IV(C)(1) as the provision plaintiff failed to satisfy through his submissions. Id.

Although DuPont did not explain in detail why the medical evidence was insufficient, no more detail is required under ERISA § 503, or its counterpart, 29 C.F.R. § 2560.503–1(h)(3). Thus, the explanation provided in the instant matter is sufficient under the law. The Board's notice and explanation is also sufficient when compared with similar cases within this circuit. See Syed v. Hercules, Inc., 214 F.3d 155, 162–63 (3d Cir.2000); Moore v. Hewlett–Packard Co., 2000 WL 361680, at *8 (E.D.Pa. Apr.7, 2000); Skinner v. E.I. Dupont de Nemours and Co., Inc., 2000 WL 376452, at *8 (D.Del. Mar.27, 2000); Merritt v. Medical Disability Insurance Plan, 1998 WL 1110694, at *4 (D.N.J. Aug.28, 1998); cf. Epright v. Envtl. Resources Management, Inc., 81 F.3d 335, 342 (3d Cir.1996) (finding denial letter statutorily inadequate in that it, inter alia, failed to provide a specific reference to the plan provisions upon which the decision was based).[23]

Therefore, there are no genuine issues of material fact regarding defendants' compliance with ERISA § 503 or 29 C.F.R. § 2560.503–1(h)(3), and as such plaintiff's motion for summary judgment as to his claim under Count I, as well as to all other counts to which it may apply, is denied. Reciprocally, defendants' motion for summary judgment as to this claim is granted.

### C. "Bad Faith" and "Conflict of Interest"

In Counts I, IV, V and VIII, plaintiff alleges that defendants, as both fiduciaries of the benefit plans and as employers, through their agents, officers and managers, actively sought to deny benefits to plaintiff for retaliatory and other reasons.[24] (D.I.1.) In particular, plaintiff argues that a conflict existed, at least in part, because of the role that Jerry H. Brenner, Esquire,[25] played in the administration and review of plaintiff's application. Id.

Upon review of the pertinent evidence and testimony, the court finds that no "bad faith" was exercised by defendants, nor was a "conflict of interest" present or related to the denial of plaintiff's application for disability benefits. Mr. Brenner's role as Labor Counsel and as a member of the

**23.** All of these cases cite to § 2560.503–1(f) as opposed to § 2560.503–1(h) referenced herein. Section (f) addresses the requirements of a plan administrator following an initial claim review and denial. In the instant matter, section (h) is appropriate because it deals with the requirements of a plan administrator upon final review and denial. However, as the requirements are virtually the same, these cases support the court's finding. Additionally, the court finds that, following the initial review of plaintiff's application, defendants substantially complied with the requirements of section (f). Although, as noted, the initial review is not the subject of this case, the two letters of denial, in concert, provided sufficient notice and explanation regarding the denial of plaintiff's application.

**24.** As noted in the fact section, the "conflict of interest" and "bad faith" claims are specifically related to plaintiff's termination on February 7, 1995. Plaintiff asserts that his claim for benefits is what spawned the alleged "retaliation" by defendants.

**25.** Mr. Brenner was Labor Counsel for DuPont. In that capacity, Mr. Brenner helped write and was a signatory to the settlement agreement between plaintiff and DuPont which resolved the claim for discriminatory termination filed with the EEOC. As noted, the agreement allowed plaintiff to apply for the disability benefits at issue herein, notwithstanding his termination. Mr. Brenner was also a member of the Board of Benefits and Pensions and as such reviewed the medical information related to plaintiff's benefits application.

Board of Benefits and Pensions notwithstanding, plaintiff has presented no evidence demonstrating that his application was unfairly considered, or was denied as a result of any inequitable conduct on the part of defendants or agents thereof, including Mr. Brenner.

On the issue of "conflict" and "bad faith," the deposition testimony of Mr. Brenner is particularly helpful. Therein, Mr. Brenner acknowledged that while he reviewed the submitted medical information, he took no part in the discussion of plaintiff's application with other members of the Board,[26] and subsequently recused himself from voting thereon.[27]

As noted, there is little record of the proceedings or deliberations of the Board on the day it voted on plaintiff's application. However, what record does exist, does not contradict the testimony of Mr. Brenner. In addition, the testimony of Dr. Benjamin Ramirez, delegate and medical consultant to the Board, does not contradict Mr. Brenner's testimony regarding his participation, nor does the testimony of Mr. Herbert Watson, who was also a delegate to the Board participating in the review of plaintiff's application.[28] In contrast, plaintiff presents no evidence that refuting these events as represented by defendants.

**26.** Deposition of Jerry H. Brenner, Esq., April 12, 2000:
BY MR. STULL:
Q: Did you make any discussion on the matter? Did you participate in the discussion?
A: I don't recall participating in the discussion other than the statement I made that I prefer not voting in the case because of my familiarity with other circumstances.
(D.I. 104, at A–701)

**27.** Deposition of Jerry H. Brenner, Esq., April 12, 2000:
BY MR. STULL:
Q: You're now saying that you did not vote on Mr. Skretvedt's application?
A: I did not vote on his application.
Q: For incapability?
A: For incapability and total and permanent disability.
Q: Both?
A: That's correct.

Additionally, the court has found no subsequent evidence demonstrating "bad faith," or a "conflict of interest" on the part of defendants or their agents and employees. Further, all evidence reviewed by the court points to the plaintiff being terminated "for cause," that is, arising out of his misconduct with regards to the DuPont facsimile machine. There is no evidence that plaintiff's application was indeed effected by that course of events. In fact, the settlement agreement arising out of plaintiff's EEOC claim contained language precluding such an event.[29] Plaintiff has also presented no evidence demonstrating that this provision of the agreement was violated.

Therefore, having reviewed all of the evidence and testimony pertinent to the claims raised by plaintiff in Counts I, IV, V, VIII, and having found no evidence that suggests that a reasonable jury could find a genuine issue of material fact in favor of the plaintiff, plaintiff's motion for summary judgment is denied. As a result, summary judgment is granted to defendants on the claims alleged in the aforementioned counts.

### c. Skretvedt's Motion to Amend

Finally, plaintiff has requested leave to

(D.I. 104, at A–699–700)

**28.** Dr. Ramirez and Mr. Watson were the only other persons deposed by plaintiff that were present at the meeting of October 13, 1998, where plaintiff's application was reviewed on appeal and denied. (D.I. 98 at A–198–202.)

**29.** In pertinent part, the agreement provided that,

2. DuPont agrees that it will permit Skretvedt to apply for benefits, without regard to applicable time limits, provided for by the incapability provision of the DuPont Pension Plan and the DuPont Total and Permanent Disability Income Plan. DuPont Spruance Plant Management shall submit Skretvedt's application and corresponding medical information to the DuPont Board of Benefits and Pension or its designate in a *neutral manner.* (D.I. 91 at 27, Ex. A (emphasis added).)

amend his complaint and add Count IX,[30] entitled "Interference With Protected Benefits Under ERISA." In proposed Count IX, plaintiff alleges that pursuant to § 510 ERISA,[31] defendants "did not advise" plaintiff of his "on-going rights to employee benefits plans" and "intentionally interfered" with plaintiff's exercise of his rights under said plans.[32] Plaintiff further alleges that defendants, through their agents, "intentionally and with specific intent" violated § 510 by "depriving plaintiff of his protected rights" under ERISA.

For their part, defendants argue that plaintiff's motion to amend should be denied on grounds that he unreasonably delayed in asserting his claim. Further, they argue that plaintiff's motion should be denied as futile because he fails to allege the specific discriminatory or wrongful conduct causing the alleged "interference" by DuPont, and as such fails to assert a claim upon which relief could be granted.

Much of this court's opinion regarding plaintiff's allegations of interference were addressed in section (b)(2)(C) above. Nonetheless, the court reiterates that plaintiff, through the evidence presented, has not sufficiently demonstrated "interference," intentional or otherwise, on the part of defendants. Although plaintiff did not unreasonably delay in asserting his claim, in light the prior findings made by this court, plaintiff's motion would be futile.

### 1. Leave to Amend

Pursuant to Rule 15, a party has a right to amend their pleading once as a matter of right prior to service or 20 days thereafter. Fed.R.Civ.P. 15(a). Thereafter, amendments to pleadings may occur only by leave of court or upon written consent by the adverse party. Id. Further, leave to amend "shall be freely given when justice so requires." Id.

In the seminal case of *Foman v. Davis,* the Supreme Court noted that "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." 371 U.S. 178, 181, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Further, commensurate with 15(a), leave should be "freely given" in the absence of "any apparent or declared reason" to deny such leave, "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc...." *Id.* at 181–82, 83 S.Ct. 227. Additionally, a court must delineate the reasons for denying any leave to amend. *Id.*

### A. Undue Delay

In *Adams v. Gould, Inc.,* the Third Circuit noted that "[t]he question of undue delay ... requires that we focus on the plaintiffs' motives for not amending their complaint to assert [the] claim earlier," 739 F.2d 858, 868 (3d Cir.1984), although, mere delay in the assertion of a claim does not make it "undue." "Delay in and of itself will not serve as a basis for denying a motion to amend unless the defendant is prejudiced." *CenterForce*

---

**30.** In the proposed amended complaint "Count IX" is instead called "Count VIII" by plaintiff. In the original complaint there was an existing "Count VIII." Thus, any references to "Count VIII" in the amended complaint are actually to the new "Count IX" and have been interpreted by the court as such.

**31.** ERISA § 510 reads in pertinent part, "It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan ...." 29 U.S.C. § 1140.

**32.** Plaintiff again cites to the language of the settlement agreement and the roles played by Jerry H. Brenner, Esq., and Ernest W. Bolton, Site Benefits Administrator of the DuPont Spruance Plan, in the creation of that agreement, as evidence demonstrating the alleged interference.

*Technologies, Inc. v. Austin Logistics, Inc.,* 2000 WL 652943, at *4 (D.Del. Mar.10, 2000). Therefore, the non-movant must be prejudiced in some fashion by the delay. For example, "a showing of a long delay may ameliorate the degree of prejudice which a non-movant must establish in order to defeat the proposed amendment." *Procter & Gamble Co. v. Nabisco Brands, Inc.,* 125 F.R.D. 405, 410 (D.Del.1987). There are, however, no definitive lines that have been drawn in this regard, thus, a court is subject to evaluating each motion on its independent factual basis.

■ This court, cognizant that leave to amend "shall be freely given" when in the interest of justice, does not find plaintiff's delay "undue," "unreasonable," or otherwise constitutes ground upon which to deny leave. As noted in *CenterForce Technologies,* delay should not be the basis for denying leave unless defendant is prejudiced. 2000 WL 652943, at *4. Defendants argue that either, plaintiff or plaintiff's counsel, and possibly both, possessed sufficient information or belief to assert the alleged conflict in the original complaint.

It is not clear, however, that plaintiff or his counsel possessed sufficient information or belief to assert this claim in the original complaint, although plaintiff did proffer a similar claim pursuant to ERISA § 502. Despite that, the court finds any prejudice to defendant insufficient to preclude leave to amend.

As defendants would not be prejudiced by allowing plaintiff leave to amend his complaint, the court will evaluate the alternative basis raised by defendants for denying leave.

**B. Futility**

■ "Futility of amendment" is characterized as a complaint which "as amended, would fail to state a claim upon which relief could be granted," *In re Burlington Coat Factory Litigation,* 114 F.3d 1410,

1434 (3d Cir.1997) (*citing Glassman v. Computervision Corp.,* 90 F.3d 617, 623 (1st Cir.1996)), or an amendment which is " 'frivolous or advances a claim or defense that is legally insufficient on its face ....' " *Larison v. City of Trenton,* 180 F.R.D. 261, 263 (D.N.J.1998) (citation omitted). In this instance, the district court would assess the complaint's legal sufficiency on the same basis as under Fed.R.Civ.P. 12(b)(6). *In re Burlington,* 114 F.3d at 1434. Should the amendment withstand this analysis, the court should grant the requested leave to the movant. Similarly, "[i]f a proposed amendment is clearly not futile, then denial of leave to amend is improper." *Larison,* 180 F.R.D. at 263–64 (D.N.J.1998) (citation omitted).

■ In their briefs, as well as at oral argument, defendants assert that allowing plaintiff to amend his complaint would be futile because the amendment fails to state a claim upon which relief may be granted. Defendants further assert that plaintiff presents no facts that would adequately support an amendment. Specifically, defendants argue that the aforementioned settlement agreement does not preclude plaintiff from exercising any of his rights, and argue that there was no "interference" from Mr. Brenner, because he abstained from the discussion regarding plaintiff's application and recused himself from voting thereon.

The court agrees and finds that granting plaintiff leave to amend his complaint would be futile because plaintiff presents no facts that clearly support his claims of a "depravation of rights" or "intentional interference." Moreover, the settlement agreement allowed plaintiff to apply for benefits, rather than, deprived him of that opportunity. The language of the agreement was designed to ensure that plaintiff receive full and fair access to the benefit application process and an impartial review.[33]

**33.** *See* note 29.

Finally, regarding the claim of "interference," all the evidence and testimony reviewed by the court suggests that neither Mr. Brenner, nor other agents or employees of defendants ever interfered with the review or decision-making process in plaintiff's application for benefits.

Therefore, consistent with *Foman*, the court finds that the "underlying facts and circumstances," to the extent to which they have been presented, inadequately support the claims alleged. Accordingly, having found sufficient ground upon which to deny leave to amend, plaintiff's motion is denied.[34]

## IV. Conclusion

For the reasons set forth above, plaintiff's motion for summary judgment is DENIED and defendants' motion for summary judgment is GRANTED. Further, plaintiff's motion to amend is DENIED. An order consistent with this opinion will follow.

---

**34.** In light of the fact that the court has denied plaintiff's motion on the basis of futility, it is unnecessary, at this point, to address defendants' argument that recognition of a

§ 510 ERISA claim requires an existing employer-employee relationship at the time of an alleged interference with protected rights.